Jeffrey M. GREEN, Plaintiff,

v.

J. Carter BROWN, Henry C. Brunie, L. A. Casler, W. P. Considine, Henry A. Loeb, Royal Little, Harry Lynn Pierson, James E. Robison, Albert H. Rubenstein, Clarke Simonds, J. B. Somerall, and Narragansett Capital Corporation, Defendants.

No. 66 Civ. 2511.

United States District Court
S. D. New York.
July 7, 1967.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Narragansett Capital Corp.

Pomerantz, Levy, Haudek & Block, New York City, for defendants Henry C. Brunie, Royal Little, James E. Robison and J. B. Somerall; Cahill, Gordon, Reindel & Ohl, New York City, for defendant Henry A. Loeb.

## OPINION

McLEAN, District Judge.

This is a derivative action by a stockholder of Narragansett Capital Corporation, a closed-end, non-diversified investment company, against directors of that corporation. Plaintiff charges that defendants violated the Investment Company Act of 1940 by causing Narragansett, without prior approval of its stockholders, to invest more than 20 per cent of its combined capital and surplus in securities of Bevis Industries, Inc. and Blackstone Industries, Inc., contrary to Narragansett's investment policy as stated in the registration statement which it filed with the Securities and Exchange Commission pursuant to the Act.[1] Both sides move for summary judgment.[2]

The motions raise two questions of construction of the Investment Company Act upon which there is apparently no direct authority. The relevant facts are undisputed. The questions are (1) did the investments violate the Act? (2) if so, is plaintiff barred by the fact that subsequent to the making of the investments and after this action was begun, the stockholders of Narragansett ratified them?

As to the first question, there is no doubt that Narragansett's registration

Sidney L. Garwin, New York City, for plaintiff.

1. The complaint also charges that defendants violated the Small Business Investment Act of 1958. This charge has apparently been abandoned. It appears without contradiction that the investments complained of were approved by the Small Business Administration.

2. Defendants moved for summary judgment orally upon the argument of plaintiff's motion, rather than by formal motion papers. No formal motion papers are necessary if it sufficiently appears from the papers on plaintiff's motion that defendants are entitled to summary judgment. Local 33, Int. Hod Carriers, etc. v. Mason Tenders, etc., 291 F.2d 496 (2d Cir. 1961); 6 Moore, Federal Practice ¶ 56.12 (2d ed. 1965).

statement contained the following language:

"Item 3. Policies with Respect to Security Investments.

None of the investment policies set forth below may be changed without the approval of the holders of a majority of the stock of Registrant:

\* \* \*

(b) At no time will the Registrant invest more than 20% of its combined capital and surplus in the securities of any one issuer (other than the United States Government)."

There is also no doubt that, contrary to this statement of policy, Narragansett did in fact invest more than 20 per cent of its combined capital and surplus in securities of each of the two companies mentioned in the complaint, Bevis Industries, Inc. and Blackstone Industries, Inc., without obtaining prior authorization from Narragansett's stockholders. Nevertheless, defendants contend that these investments did not violate the Act. Their argument rests upon the following provisions of the statute.

Section 8(b) of the Act (15 U.S.C. § 80a–8(b)) provides:

"(b) Every registered investment company shall file with the Commission \* \* \* an original and such copies of a registration statement, in such form and containing such of the following information and documents as the Commission shall by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors:

(1) a recital of the policy of the registrant in respect of each of the following types of activities \* \* \*. [There follows an itemization of various activities, such as borrowing money, etc., none of which is relevant here.]

(2) a recital of the policy of the registrant in respect of matters, not enumerated in paragraph (1) of this subsection, which the registrant deems matters of fundamental policy and elects to treat as such;"

Section 13(a) of the Act (15 U.S.C. § 80a–13(a)) provides:

"(a) No registered investment company shall, unless authorized by the vote of a majority of its outstanding voting securities—

\* \* \*

(3) \* \* \* deviate from any fundamental policy recited in its registration statement pursuant to section 80a–8(b) (2) of this title;"

Narragansett's registration statement contained a section entitled "Item 2. Fundamental Policies of the Registrant." Instructions issued by the Securities and Exchange Commission as to how the registration statement should be prepared made it clear that subdivision (h) of this Item 2 was to contain:

"Any other policy which the registrant deems a matter of fundamental policy and elects to treat as such pursuant to Sections 8(b) (2) and 13(a) (3) of the Investment Company Act."

Neither in subdivision (h) nor in any other portion of Item 2 of its registration statement did Narragansett make any reference to the 20 per cent limitation policy in issue here. · The language previously quoted announcing that policy appears, not in Item 2 of the registration statement, but in Item 3. The Securities and Exchange Commission's instructions with respect to Item 3 stated that the section was to contain "the investment policy of the registrant with respect to each of the following matters which is not described as a fundamental policy of the registrant under Item 2 \* \* \*."

It is clear, therefore, that in filling out the registration statement in accordance with the Securities and Exchange Commission's instructions, Narragansett did not characterize the 20 per cent limitation policy as a "fundamental policy." Defendants contend that Section 80a–13(a) does not prohibit deviation from any policy not described as fundamental, and that therefore Narragansett has not violated the Act.

■ This construction of the statute could be said to lead to an unfortunate result. One would think that no policy could be more "fundamental" in an investment company than its policy pertaining to investments. The purpose of the registration statement is to provide information as to the company's proposed activities "for the protection of investors" (15 U.S.C. § 80a–8(b) (1)). Certainly, the policy in question here would be of interest to investors. To know it and to be able to rely on it increases their protection. Defendants' argument necessarily leads to the conclusion that an investment company may deviate from its investment policy with impunity, as far as violation of the Act is concerned, as long as its registration statement does not label these policies "fundamental." [3]

Nevertheless, the words of the statute require this curious result so plainly that it cannot be avoided without ignoring the statutory words completely. 15 U. S.C. § 80a–8(b) (2) requires the recital in the registration statement, in addition to the information required by subdivision 1, of all those matters "which the registrant *deems* matters of fundamental policy and *elects* to treat as such" (italics supplied). Clearly this language permits, even invites, the registrant, in writing its registration statement, to withhold the fatal label "fundamental" from any policy, no matter how important it may be, which subsection 1 does not specifically require it to state. I see no escape from this language. It authorizes what was done here.

■ And Section 80a–13(a) is equally plain. It does not prohibit a deviation from each and every policy mentioned in the registration statement. It prohibits deviation from certain specified policies and concludes with the catchall phrase, "any fundamental policy recited in its registration statement pursuant to section 80a–8(b) (2)," i. e., those policies which the registrant has "elected" to "deem" fundamental. The conclusion is inescapable that Section 13 is not violated by failure to observe a policy, not otherwise specified in the section, which the registrant has refrained from characterizing as fundamental in its registration statement. If it be thought undesirable to permit an investment company to "write its own ticket," so to speak, in this fashion, the remedy lies with Congress, not with the courts. I feel constrained to hold that Narragansett's failure to comply with this 20 per cent limitation policy did not violate the Act.[4]

■ Although this conclusion makes it unnecessary to consider the question of ratification, I note my views on it briefly. The investment policy set forth in Narragansett's registration statement was that "without the approval of the holders of a majority of the stock of Registrant," Narragansett would not invest more than 20 per cent of its combined capital and surplus in the securities of any one issuer. Literally this does not say that the "approval" of stockholders is to be manifested prior to the making of the investment, but it would seem that this could fairly be implied.

3. It should be noted, for what it may be worth, that Narragansett's stockholders, at a meeting held on March 29, 1966, after these investments were made, approved a change in the 20 per cent limitation policy for the future. The proxy statement sent by Narragansett to its stockholders prior to this meeting referred to the 20 per cent limitation policy as a "fundamental investment policy" of the corporation.

4. I have not ignored Lutz v. Boas, 39 Del.Ch. 585, 171 A.2d 381 (1961), cited by plaintiff. The point involved here does not seem to have been raised in that case. The court appears to have held, without discussion, that a departure from the company's investment policy as stated in its prospectus violated the Act.

In the present case, the 20 per cent limitation policy also appeared in the prospectus. But under the Act, the only relevant policies are those contained in the registration statement. The prospectus is immaterial. See Leighton v. The One William Street Fund, Inc., 1964–1966 CCH Fed.Sec.L.Rep. ¶ 91,-561 (S.D.N.Y.1965). Consequently, I do not regard Lutz v. Boas as valid authority for plaintiff's position here.

It is undisputed that since these investments were made, the stockholders have ratified them. Concededly this ratification was sought with a view to obtaining a defense to this action, but the proxy statement for the stockholders' meeting makes that clear, and there is no claim that the matter was not fairly presented to the stockholders.

Thus the stockholders have now approved, after the event, acts which they could have authorized before they occurred. On general principles, such a ratification is valid.

See, e. g., Boyce v. Chemical Plastics, Inc., 175 F.2d 839 (8th Cir. 1949), cert. denied, 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503 (1949); Stephens Fuel Co. v. Bay Parkway Nat. Bank, 109 F.2d 186 (2d Cir. 1940); 2 Fletcher, Private Corporations §§ 752, 764 (Rev.ed.1954).

But plaintiff points to the language of 15 U.S.C. § 80a–46(b) which provides:

"Every contract made in violation of any provision of this subchapter or of any rule, regulation, or order thereunder, * * * shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, regulation, or order."

The difficulty arises from the word "void." Plaintiff cites authorities for the general proposition that void acts cannot be ratified. E. g., Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959); Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016 (3rd Cir. 1942); Continental Securities Co. v. Belmont, 206 N.Y. 7, 99 N.E. 138, 51 L.R.A.,N.S., 112 (1912).

But these cases all involved acts which the stockholders could not have validly authorized in the first place, i. e., fraud,

antitrust violation, and the like. But for the presence of the word "void" in Section 80a–46(b) these cases would clearly have no application here.

The question is whether, by the use of the word "void," Congress intended to prohibit ratification of acts which could have been validly authorized. I do not believe that it did. Section 80a–46(b), despite its use of this word, does not make the offending contract completely void, for apparently the rights of persons who did not have "actual knowledge" of the violation are not affected. A recent decision involving Section 29 of the Securities Exchange Act of 1934 is closely analogous. The court there held that the word "void" should be read "voidable." The Greater Iowa Corp. v. McLendon, CCH Fed.Sec.L.Rep. ¶ 91941 (8th Cir. 1967).

I will follow that decision here. Accordingly, I hold that the ratification by the stockholders is a valid defense to this action.

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted.

So ordered.