398 F.2d 1006
 Jeffrey M. GREEN, Plaintiff-Appellant,
v.
J. Carter BROWN, Henry C. Brunie, L. A. Casler, W. P. Considine, Henry A. Loeb, Royal Little, James E. Robison, Albert H. Rubenstein, Clark Simonds, J. B. Somerall, Narragansett Capital Corporation, Defendants-Appellees, and
Harry Lynn Pierson, Defendant.
 No. 423.
 Docket 31844.
 United States Court of Appeals Second Circuit.
 Argued June 6, 1968.
 Decided July 29, 1968.
 
 Sidney L. Garwin, New York City (Bertram Bronzaft, New York City, on the brief), for plaintiff-appellant.
 William E. Haudek, New York City (Pomerantz, Levy, Haudek & Block, Abraham H. Pomerantz, New York City, on the brief), for defendants-appellees J. Carter Brown and another.
 Peter H. Morrison, New York City (Segal & Morrison, New York City, on the brief), for defendant-appellee Narragansett Capital Corp.
 David R. Hyde, New York City (Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, on the brief), for defendant-appellee Henry A. Loeb.
 Philip A. Loomis, Jr., Gen. Counsel; Walter P. North, Associate Gen. Counsel; Jacob H. Stillman, Sp. Counsel; Edward L. Lublin, Atty., Washington, D. C., for the Securities and Exchange Commission, amicus curiae.
 Before WATERMAN, ANDERSON and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 Jeffrey M. Green, a shareholder in the Narragansett Capital Corporation, a closed-end non-diversified management investment company registered with the Securities and Exchange Commission under the Investment Company Act of 1940,[1] brought this derivative action against one former and ten present directors of the corporation. Plaintiff claimed that defendants violated the Act by causing the corporation, without prior shareholder approval, to make two loans which were prohibited by an "investment policy" recited in the corporation's registration statement on file with the Commission. That policy, which could be changed only by approval of a majority of Narragansett's stockholders, was that the company would not invest more than twenty per cent of its combined capital and surplus in the securities of any one issuer. Plaintiff alleged that the corporation was damaged by the prohibited loans, and asked that they be declared void and that defendants be required to account to Narragansett for its damages. On cross-motions for summary judgment, the United States District Court for the Southern District of New York, Edward C. McLean, J., entered an order dismissing the complaint. 276 F.Supp. 753 (1967). Plaintiff appeals; for reasons indicated below, we remand.
 
 
 1
 The basic facts are not contested. The parties have apparently agreed that the relevant total capital and surplus of Narragansett is $8,472,004; twenty per cent of this figure is $1,694,401. Prior to 1964, Narragansett already had $1,563,828 invested in Blackstone Industries, Inc., and at least $450,000 in Bevis Industries, Inc. In that year, it loaned Blackstone $814,708 and Bevis $1,250,000. As a result, Narragansett's total investment in each company exceeded twenty per cent of its total capital and surplus, contrary to the investment policy. Prior shareholder approval was not obtained for either loan; however, after the loans were made, Narragansett's policy was amended to permit such loans in the future. After plaintiff brought this action, the shareholders specifically ratified the loans. The two investments have since been renegotiated; the outstanding loans were cancelled and replaced by new investments in lesser amounts under the twenty per cent figure.
 
 
 2
 In the district court, argument centered on the contention that defendants had violated sections 8(b) (2) and 13(a) (3) of the Act, 15 U.S.C. §§ 80a-8(b) (2) and 80a-13(a) (3), which are complementary provisions. Section 8(b) requires an investment company to file with the Commission a registration statement containing specified information. Paragraph (1) of this section calls for listing certain types of policies; paragraph (2) calls for listing policies not enumerated in paragraph (1) "which the registrant deems matters of fundamental policy and elects to treat as such." Section 13(a) (3) makes it a violation of the Act to deviate from the fundamental policies set forth in section 8(b) (2) unless the deviation is "authorized by the vote of a majority of * * [the company's] outstanding voting securities."
 
 
 3
 Plaintiff claimed in the district court that a policy which required shareholder approval, and was so inherently basic to Narragansett's operations, had to be considered as "fundamental" under section 8(b) (2) referred to above. Defendants argued that the company's registration statement did not label its twenty per cent policy as "fundamental" and that the need for shareholder approval did not automatically make a policy "fundamental" within the meaning of section 8(b) (2). Defendants emphasized that the form supplied to them by the Commission supported this view. The district court accepted defendants' position, although it pointed out, 276 F. Supp. at 756:
 
 
 4
 One would think that no policy could be more "fundamental" in an investment company than its policy pertaining to investments. * * * Defendants' argument necessarily leads to the conclusion that an investment company may deviate from its investment policy with impunity, as far as violation of the Act is concerned, as long as its registration statement does not label these policies "fundamental." [Footnote omitted.]
 
 
 5
 Nevertheless, the court felt required to reach this "unfortunate" and "curious result" because the language of section 8(b) (2):
 
 
 6
 [P]ermits, even invites, the registrant, in writing its registration statement, to withhold the fatal label "fundamental" from any policy, no matter how important it may be, which subsection 1 does not specifically require it to state.
 
 
 7
 In addition, the district court found that the shareholder ratification was a valid defense to the action because the loans could have been approved in advance by shareholder vote.
 
 
 8
 In this court, the case has assumed aspects not emphasized below. While repeating the arguments based on sections 8(b) (2) and 13(a) (3), plaintiff also claims that other sections of the Act were violated, most significantly sections 8(b) (1), 13(a) (2) and 21, 15 U. S.C. §§ 80a-8(b) (1), 80a-13(a) (2) and 80a-21. As already indicated, paragraph (1) of section 8(b) requires the registration statement to recite the company's policies on various activities, such as borrowing money or, in subparagraph (G), "making loans to others persons." Section 13(a) (2) provides that no registered investment company shall, without majority shareholder approval, "make loans to other persons, except * * * in accordance with the recitals of policy contained in its registration statement in respect thereto." Finally, section 21 declares:
 
 
 9
 It shall be unlawful for any registered management company to lend money or property to any person, directly or indirectly, if —
 
 
 10
 (a) the investment policies of such registered company, as recited in its registration statement and reports filed under this subchapter, do not permit such a loan * * *.
 
 
 11
 Without going into the details of plaintiff's arguments based on these sections and defendants' rejoinders, it does seem that the claim of a violation of section 21 is a weighty one, although, as indicated below, we do not decide the issue. The limitations of that section appear to apply not just to a "fundamental" policy but to all "investment policies," and Narragansett's twenty per cent rule was an investment policy.[2] Relying upon such cases as Palmer v. Reconstruction Finance Corp., 164 F.2d 466, 468 (2d Cir. 1947), defendants maintain that plaintiff is foreclosed from raising this point because it was not mentioned below. It is true that in that case we stated that "although * * we may affirm a judgment upon grounds not urged in the lower court, we may not reverse one upon such a ground. [Footnote omitted.]" But in a later stage of the same case we made clear, New York, N. H. & H. R. Co. v. Reconstruction Finance Corp., 180 F.2d 241, 244 (2d Cir. 1950), that "the rule that an order will not be reversed upon a point first raised upon appeal is not absolute, in spite of our unconditional statement to the contrary." While we would not ordinarily be receptive to attempts to litigate issues not raised in the trial court, this appears to be a case calling for relaxation of the usual rule, since the issues now raised are of great significance in construing an act designed to protect thousands of investors.[3]
 
 
 12
 Buttressing this conclusion is the presence in this court of the Securities and Exchange Commission, which successfully sought leave to participate as amicus on the claim that the appeal raises "important questions of law * * * [which] will significantly affect not only the enforcement of the Act in private litigation * * * but also the enforcement and administration of the Act by the Commission." In its brief, the Commission vigorously urges that Congress intended the term "fundamental," as used in sections 8(b) (2) and 13(a) (3), to apply to any investment policy which a registrant "elects" to make subject to shareholder approval; under this view, Narragansett's twenty per cent policy was fundamental. The Commission claims that the Act itself requires this result. In any event, it asks us not to so construe the Act as to foreclose it from exercising its rulemaking powers to adopt rules of prospective application defining fundamental policies as including investment policies which a company elects to make subject to shareholder approval. The Commission admits that the interpretation which it now urges may be inconsistent with the registration forms it has prescribed under the Act, including the form used by Narragansett. The Commission states that it is revising its forms, but points out that in this case Narragansett's use thereof may give defendants a defense under section 38(c) of the Act, 15 U.S.C. § 80a-37(c), which applies to actions taken "in good faith in conformity with any rule, regulation, or order of the Commission * * *." The Commission also argues that section 21(a) of the Act was clearly violated.[4]
 
 
 13
 Finally, defendants call our attention to events which have transpired since the entry of summary judgment in the trial court. They point out that a few months after plaintiff noticed his appeal, the entire amount of the two outstanding loans in question was repaid and, in each case, replaced by a new loan in amounts not exceeding the twenty per cent limitation. From this they argue that "all actionable damage, if any, has been eliminated and the action has become moot."[5] Plaintiff does not agree that all damage has disappeared,[6] and in addition asks at the very least for the right to further discovery of the facts.
 
 
 14
 We are thus left with the following state of affairs. The district court has construed two sections of the Act in a way that is at least questionable, without the benefit of the Commission's views. We are faced with arguments based on other sections of the Act on which the district court understandably did not rule. We are advised by the Commission of a possible defense with which the district court did not specifically deal, i. e., good faith reliance on Commission forms. And finally, there is the possibility that the case is moot, although factual issues are raised as to that.
 
 
 15
 Under these circumstances, we believe that the sensible thing to do is to remand to the district court so that it may consider the whole case again and rule on the issues as now presented. We realize that the district court has already held that ratification by the shareholders of the loans is a bar to an action based upon sections 8(b) (2) and 13(a) (3). Plaintiff and the Commission have made several arguments as to why that ruling was incorrect; e. g., they point out that the requirement of advance shareholder approval gives minority shareholders both an opportunity before the event to dissuade the majority, cf. Laurenzano v. Einbender, 264 F.Supp. 356, 361-362 (E.D.N.Y. 1966), and a chance to dispose of their holdings before the change occurs, and that allowing retroactive approval eliminates both of these possibilities. These considerations are weighty in view of the policy of the Act to give shareholders an opportunity to pass upon changes in investment policy in advance. 15 U.S.C. § 80a-1(b) (6). And there is an additional question, not presented to the district court, whether there could be ratification of a violation of section 21 in any event, since that section, unlike section 13, omits any provision for shareholder authorization and characterizes the loans there prohibited as "unlawful." These and related issues should be considered on remand.
 
 
 16
 The case is remanded for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 15 U.S.C. §§ 80a-1 to 80a-52
 
 
 [2]
 Defendants respond that § 21 should be read together with § 13(a), which they say allows deviations from any non-fundamental policy and, with prior shareholder approval, from any fundamental policy. If § 21 is so interpreted, defendants contend, only loans which deviate from fundamental policies without approval violate that section
 
 
 [3]
 Plaintiff also asserts, with modest justification, that its theories below were not confined to the sections of the Act considered by the district court. Cf. United States v. L. N. White & Co., 359 F.2d 703, 711 (2d Cir. 1966)
 
 
 [4]
 The Commission takes no position with regard to plaintiff's argument based on sections 8(b) (1) and 13(a) (2)
 
 
 [5]
 Defendants' motion to dismiss on this ground has been referred to this panel
 
 
 [6]
 Plaintiff argues that "merely the form of the loans has changed," and that damages caused by the improper loans continue despite the refinancing
 
 
 
 17
 ANDERSON, Circuit Judge (concurring in the order to remand):
 
 
 18
 I agree with Judge Feinberg's discussion of the facts and the issues but I would go further and hold that the defendants violated § 21 of the Act. There is no question that the 20% policy was an "investment" policy within the meaning of § 21, or that the loans in issue were in excess of the 20% ceiling. Because § 21 contains no provision for authorization by a majority of stockholders of deviations from policy, as in § 13, the most persuasive argument that ratification is permissible under § 13[1] is not applicable under § 21. Nor is the defense of good faith reliance provided by § 38 available under § 21, because the SEC has issued no regulations pursuant to that section.
 
 
 19
 In my opinion there is no need on remand for the district judge to rule on liability under §§ 8(b) (1) and 13(a) (2), as to which the SEC has taken no position, or to consider again arguments relating to liability under §§ 8(b) (2) and 13(a) (3). The view which the court took in regard to the latter sections was, at the time, compelled by the SEC's regulations, if not by the language of the statute alone. If there is need for revision of this portion of the Act, or the regulations, it is up to Congress and the Commission, not the courts, to make the change.
 
 
 20
 I am not wholly persuaded by the affidavits which the defendants have submitted on appeal that there is no longer any possibility of the plaintiff obtaining relief, by way of damages or otherwise, and the case must therefore be remanded to the district court in any event.
 
 
 
 Notes:
 
 
 [1]
 As a general rule, a majority of stockholders may ratify retroactively acts which they might originally have authorized. See e. g., Boyce v. Chemical Plastics, Inc., 175 F.2d 839 (8 Cir.), cert. dednied, 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503 (1949)