437 F.2d 1222
 John F. KAPPEL and Edna I. Kappel, Appellants,
v.
UNITED STATES of America.
ESTATE of William J. KAPPEL, Deceased, by Sarah M. Kappel and William D. Kappel, Executors and Sarah M. Kappel, Appellants,
v.
UNITED STATES of America.
 No. 18852.
 No. 18853.
 United States Court of Appeals, Third Circuit.
 Argued December 11, 1970.
 Decided February 1, 1971.
 Rehearing Denied March 16, 1971.
 
 John A. Metz, Jr. (Robert G. MacAlister, Frank E. Coho, M. J. Arnd, Pittsburgh, Pa., on the brief), for appellants.
 Stephen H. Hutzelman, Dept. of Justice, Tax Division, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D. C., Richard L. Thornburgh, U. S. Atty., on the brief), for appellee.
 Before ALDISERT, ADAMS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The taxpayers in this case improperly received distributions from four employees' pension trusts and upon threat of assessment by the Internal Revenue Service ("the Service") paid an income tax on the distributions. Proceeding to restore the distributions to the respective pension trusts, the taxpayers then deducted on their 1961 return, pursuant to § 1341 of the Internal Revenue Code of 1954 ("the Code"),[1] the amount of the income tax paid pursuant to the threatened assessment. The Internal Revenue Service disallowed the deduction. The taxpayers paid the contested tax and brought suit for a refund.
 
 
 2
 The issue raised on this appeal is whether the taxpayer-appellants are entitled to a refund of the taxes paid. This in turn depends primarily on whether they had a "legal obligation" to repay the amounts improperly received from the pension trusts so as to qualify for the deduction provided by § 1341 of the Code.[2]
 
 
 3
 Although the taxpayers had presented to this Court alternative theories for deductions under §§ 162 and 165(c) (2)[3] of the Code, the District Court made no findings on these issues,[4] nor were these matters raised in the complaints filed in the District Court, in taxpayers' "narrative statement" to that Court, or in taxpayers' motions under Fed.R.Civ.P. 52(b) and 59(a) to amend findings of fact, to alter or amend judgment or for a new trial. We therefore decline to consider these claims since they are not properly raised by this appeal. See Hanley v. Chrysler Motors Corp., 433 F.2d 708, 711 (10th Cir. 1970).[5]
 
 
 4
 Taxpayers John and William Kappel were officers, directors, and principal stockholders in four corporations which maintained separate employees' pension plans instituted in the 1930's and 1940's.[6]
 
 
 5
 The pension plans were recommended to taxpayers by Jules Polachek, a Pittsburgh life insurance underwriter who held himself out as, and was generally reputed to be, an expert in the field of corporate pension plans. The pension plans in this case were governed by separate groups of trustees chosen by the boards of directors of each corporation. Taxpayers and their relatives constituted a majority of the trustees for each trust. Each trust was funded by one of the four settlor corporations, and the trustees contracted for separate annuity policies on each participating employee, including taxpayers, through several life insurance companies. The ownership of each policy was vested in the trustees governing the particular trust of the corporation employing each beneficiary.
 
 
 6
 In 1954, when both taxpayers were over 65 years of age but still active in the corporations, Polachek suggested a method which would remove the annuities in the pension trusts from the estates of the taxpayers: the Kappels were to continue their employment, but to agree to an immediate distribution of the proceeds of the annuity policies held by the pension trusts for the taxpayers' benefit; these proceeds would then be reinvested in deferred annuities, with members of taxpayers' families named as beneficiaries. Polachek told taxpayers they would incur no federal income, gift, or estate tax liability for these transactions.
 
 
 7
 Despite contrary provisions in the pension trusts,[7] the taxpayers relied on Polachek's advice, and the proceeds were removed and reinvested in 1954, 1955, 1957 and 1958. In each instance, application was made on behalf of the trustees to the various life insurance companies for payment in a lump sum of the proceeds that were being held to insure the lives of the taxpayers. These amounts were then forwarded to Polachek. The applications to the insurance companies were signed either by taxpayer John T. Kappel, or by William D. Kappel (son of William J. Kappel, the other taxpayer). The District Court found there was no consent, joinder, or formal action by all or a majority of the trustees of any pension fund in the application for payment of the annuity proceeds.
 
 
 8
 Late in 1959, the Service informed the Kappels of its intention to assess deficiencies regarding their individual income taxes for each of the years in which annuity proceeds had been received but not reported as income. In response to this information, the Kappels retained expert legal and accounting representatives. These counsel advised the Kappels that the pension benefits had been paid in violation of provisions of the pension trust agreements, and recommended that the taxpayers refund the payments to the pension trusts. After extended demands and negotiations, legal counsel secured refunds from the insurance companies of the premiums paid for the deferred annuities, and the taxpayers restored such funds to the pension trusts in 1960.
 
 
 9
 No legal proceedings were instituted to require such repayments, and the Government concedes none were necessary for the taxpayers to establish their eligibility for the deduction provided under § 1341 of the Code. Rather, the question on this appeal is whether there existed a legal obligation on the part of the Kappels to repay to the trusts the monies improperly received. In 1961, the Kappels claimed a deduction on their 1960 tax returns based on § 1341 of the Code for taxes paid upon the funds received from the pension trusts in 1954, 1955, 1957 and 1958. The Service disallowed the deductions, the Kappels paid the taxes due, and in 1964 filed in the District Court two complaints demanding a refund of such taxes. Honorable Gerald J. Weber, United States District Judge for the Western District of Pennsylvania, ordered the complaints consolidated.
 
 
 10
 After a trial lasting five days, Judge Weber found in an opinion reported at 281 F.Supp. 426 (W.D.Pa.1968) that the taxpayers had no legal obligation to return the funds that had been withdrawn from the trusts, and accordingly, rendered a decision for the United States. Taxpayers then moved to take additional testimony to show that in 1967 the Service found the original pension trusts all to have been disqualified under § 503(c) (6) of the Code as qualified pension plans within the meaning of § 401 of the Code as of the years in which improper withdrawals were made. See also § 503(a) (2). The trial judge denied the motion for the taking of further testimony because "there was no such threat existing in 1960, either by other beneficiaries who could allege impairment of the trust res, or by those affected by the loss of tax benefits first raised * * *" several years later. The Court then entered judgments in favor of the Government, and the taxpayers appealed.
 
 
 11
 In order to prevail, the taxpayers rely on the claim of right doctrine codified in § 1341. This theory originated in North American Oil Consolidated v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), in part as a criterion for determining what constituted "gross income" within the meaning of the predecessor of § 61 of the Code, but primarily as an application of the annual accounting principle consistently mandated by Congress to be an integral part of the federal income tax system. See Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931). As the Supreme Court has recently stated in United States v. Skelly Oil Co., 394 U.S. 678, 681-682, 89 S.Ct. 1379, 1382, 22 L.Ed. 642 (1969), "[s]ection 1341 of the 1954 Code was enacted to alleviate some of the inequities which Congress felt existed in this area. See H.R.Rep.No.1337, 83d Cong., 2d Sess., 86-87 (1954) * * * Nevertheless it is clear that Congress did not intend to tamper with the underlying claim-of-right doctrine." An example of an inequity troubling Congress was the fact that prior to the enactment of § 1341 a taxpayer, because of a change in his tax bracket, might not receive a tax benefit in the year of repayment of the item equivalent to the tax detriment suffered in the year when the item was taken into income. See Healy v. C. I. R., 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953).
 
 
 12
 The requirement that a legal obligation exist to restore funds before a deduction is allowable under the claim of right doctrine is derived from the language of § 1341(a) (2) of the Code: "a deduction is allowable * * * because it was established * * * that the taxpayer did not have an unrestricted right to such item * * *." See e. g., Crellin's Estate v. C. I. R., 203 F.2d 812 (9th Cir. 1953); Joseph P. Pike v. Commissioner, 44 T.C. 787 (1965). In pursuing the rationale for this requirement, it is necessary to distinguish between cases where one never in fact had a right to an item of income and may not legally continue to use it as he pleases, and situations where regardless of the doubtfulness of his right to the item, he may nevertheless continue to exercise dominion over the item.
 
 
 13
 Taxpayers do not dispute the above principle of law, but rather argue that either the remaining trustees or the beneficiaries of other annuities under the trusts could legally have compelled repayment of the amounts improperly withdrawn. The difficulty with this argument is that the trial judge found (1) taxpayers, as beneficiaries, consented to any breach of the terms of the trust agreement committed by the trustees; (2) taxpayers, as principal officers and stockholders, also consented to such breach on behalf of the settlor corporations; and (3) in any event no impairment or injury to the interest of any other beneficiary in the trusts resulted from the payments because each beneficiary was covered by a separate annuity contract.
 
 
 14
 The taxpayers recognize that the third finding is particularly damaging to their case and argue that it is clearly erroneous within the meaning of Fed.R.Civ. P. 52(a). This contention is based on the premise that the withdrawal of funds by the Kappels placed the tax exempt status of the pension trusts in such jeopardy that the other beneficiaries could have persuaded a court of equity to require the taxpayers to replace the funds in an attempt to save the preferred tax status of the pension trusts.
 
 
 15
 At trial, however, the taxpayers presented no evidence that this theory motivated them to refund the annuity proceeds, but rather argued they could have been compelled to return the money solely because it had been removed in a manner contrary to the trust agreements. Only after Judge Weber filed his opinion containing findings of fact and conclusions of law adverse to the taxpayers on the theory pursued at trial was this new causative theory presented in the form of motions under Fed.R. Civ.P. 52 and 59.
 
 
 16
 Because we cannot find Judge Weber's findings of fact to be clearly erroneous on the basis of the evidence presented to him, we must decide whether he abused his discretion in refusing to hear further evidence, or erred as a matter of law in refusing to alter or amend the judgment.
 
 
 17
 Preliminarily, we note that the taxpayers have the burden of proving their eligibility for a claimed deduction, in order to recover taxes alleged to have been erroneously collected. United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). The taxpayers did not meet this burden with respect to their original theory of the case, but they have suggested in their briefs that no further evidence need be adduced to support their new theory. We will, therefore, as Judge Weber appears to have done, examine directly the merits of taxpayers' argument in this regard.
 
 
 18
 We agree that the loss by a pension trust of its income tax exemption under § 503 of the Code carries very serious and adverse consequences to the employer and employees. Nonetheless, § 1.503(d)-1(a) of the Income Tax Regulations provides that an organization denied exempt status because it has engaged in a prohibited transaction may regain its exempt status by filing a new claim of exemption, and "a written declaration * * * by a principal officer * * * that the organization will not knowingly again engage in a prohibited transaction." Section 1.503(d)-1(b) of the Regulation then recites that the Commissioner of Internal Revenue shall notify the organization whether or not he is satisfied with its statement. Assuming, without deciding, that some type of action (at least for damages) could be maintained against taxpayers by the other beneficiaries for loss of the tax exempt status of the pension trusts, the question is whether a Pennsylvania state court would order the funds, themselves, to be restored because their removal placed the exempt status in jeopardy.[8]
 
 
 19
 In support of their claim, taxpayers cite Revenue Ruling 67-9, 1967-1 Cum. Bull. 143. That Ruling purports to explain § 1.503(d)-1 of the Regulations, stating "these regulations presuppose that, in the case of an organization denied exemption by reason of its having engaged in a prohibited transaction, the grounds for the original denial of exemption shall have been removed before an exemption may be reinstated for future years." In substance, the Ruling requires that a loan made wtihout adequate security either be repaid or adequate security posted, for otherwise the violation would be "continuing." The violation here, however, was not "continuing" in the sense that word is used in the Ruling, for the continuation of the Kappels' withdrawals did not imperil the integrity of the trusts. Each beneficiary's pension was separately funded; no funds of anyone but the Kappels were withdrawn. The very fact that improper withdrawals from the trusts had occurred was the ground for disqualification (see e. g., Rev.Rul. 55-297, 1955-1 Cum.Bull. 393). But whether the Service would require restoration of the funds rather than, for example, a change in the composition of the board of trustees, as a condition for regranting the exemption is not clear even today. Compare Rev.Rul. 69-233, 1969-1 Cum.Bull. 156; Rev.Rul. 70-315, 1970 Int.Rev. Bull.No.25 at 8. Furthermore, the record is barren of any evidence on this question.
 
 
 20
 Thus, we believe Judge Weber to have been correct in holding that the taxpayers did not demonstrate the existence in 1960 — when the funds were repaid — of a valid claim by the other beneficiaries or trustees which would have required the Kappels to return the funds to the trusts. This being so, there is no compliance here with the requirements of the claim of right doctrine.
 
 
 21
 Accordingly, the judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 26 U.S.C.A. §1341. "Computation of tax where taxpayer restores substantial amount held under claim of right. (a) General rule. — If —
 (1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;
 (2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item;
 * * * * *
 then the tax imposed by this chapter for the taxable year shall be the lesser of the following:
 (4) the tax for the taxable year computed with such deduction; or
 (5) an amount equal to —
 (A) the tax for the taxable year computed without such deduction, minus
 (B) the decrease in tax under this chapter * * * for the prior taxable year * * * which would result solely from the exclusion of such item * * * from gross income for such prior taxable year * * *."
 
 
 [2]
 We note that while $182,838.12 was received by John F. Kappel and $442,122.60 was received by William J. Kappel, only $160,658.49 and $400,176.63 was returned respectively
 
 
 [3]
 26 U.S.C.A. § 162: "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *"
 26 U.S.C.A. § 165(c) (2): "There shall be allowed as a deduction * * * losses incurred in any transaction entered into for profit * * *"
 
 
 [4]
 We do not regard the District Court's statement that there were "no business considerations or economic benefits in this case sufficient to support any deduction under any other section of the Code" than § 1341 as laying a proper foundation for raising the specific application of §§ 162 and 165 on this appeal, because the taxpayers never squarely presented these particular provisions to the Court
 
 
 [5]
 This case does not appear to present "exceptional" circumstances justifying a departure from the rule disfavoring consideration of new legal theories on an appeal. For cases justifying a determination of new issues, see e. g., Green v. Brown, 398 F.2d 1006 (2d Cir. 1968); Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061 (4th Cir. 1969). Our view of this matter is bolstered by the fact that different evidence might be adduced in the District Court by both sides to support or oppose these new theories
 
 
 [6]
 Their wives are parties here only because they joined in the returns filed for the calendar year 1960, and no further reference will be made to them. Also, because taxpayer William J. Kappel died after the trial of the case, his estate was substituted for him as plaintiff
 
 
 [7]
 Each pension trust provided that pension benefits could not be paid to a beneficiary in one lump sum; no beneficiary had any power of anticipation of the payments provided in the annuity policy; no sale, assignment, transfer, anticipation, commutation, or alienation could be made by a beneficiary
 
 
 [8]
 Because the District Court found the situs of each pension trust to be Pennsylvania, and the trust instruments are silent as to the place of administration, the law of Pennsylvania controls the administration of the trusts. See e. g., Haberland v. Haberland, 303 F.2d 345 (3rd Cir. 1962). While the Government has argued that only actions which might be brought against beneficiaries are relevant, the taxpayers at oral argument have pointed to possible actions against trustees as equally important. For purposes of the claim of right doctrine we believe the Government to be correct. The withdrawals here were required to be taken into income by the Kappels not because they, as trustees, caused them, but because they, as beneficiaries, received them. The relevant obligation to repay, therefore, must arise from the taxpayer's role as beneficiary rather than as a trustee. Otherwise, the availability of the claim of right relief provided by § 1341 of the Code would turn on what is merely the fortuity of holding dual positions. If the Kappels, as trustees, were compelled to repay the funds they improperly authorized to be withdrawn, relief must be sought in other sections of the Code. Without intimating any view in regard to this case, it is conceivable, for example, that a business expense deduction might be allowable to a trustee under § 162 of the Code for damages arising from a breach of his fiduciary duties. Since we believe Judge Weber to have been correct in determining that no discernible harm had yet befallen the other beneficiaries, at the time the money was repaid, we need not resolve whether the principles expressed in Restatement of Trusts 2d § 265 rather than § 256 would control any appropriate remedy the other beneficiaries might otherwise have