742 F.2d 67
 Adolph W. SCHMIDT, John F. Tim, Jr., and James M. Walton,
successor trustees for Standard Car Finance
Corporation, Plaintiffs-Appellants,
Cross-Appellees,
v.
The POLISH PEOPLE'S REPUBLIC, Defendant-Appellee, Cross-Appellant.
 No. 1326, Dockets 84-7134, 84-7158.
 United States Court of Appeals,
Second Circuit.
 Argued June 7, 1984.
Decided Aug. 16, 1984.
 
 James J. Armenakis, New York City (Abberley, Kooiman, Marcellino & Clay, New York City, of counsel), for plaintiffs-appellants, cross-appellees.
 Mark C. Flavin, New York City (Theodore M. Sysol, William J. Honan, III, New York City, on the brief, Haight, Gardner, Poor & Havens, New York City, of counsel), for defendant-appellee, cross-appellant.
 Before OAKES and WINTER, Circuit Judges and MISHLER, District Judge.*
 WINTER, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Adolph W. Schmidt, John F. Tim, Jr. and James M. Walton, successor trustees for Standard Car Finance Corporation ("Standard") brought this action under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. Secs. 1330 et seq. (1976) ("FSIA" or "Act") to recover on defaulted Treasury notes issued by the Republic of Poland in 1929 and 1930. Judge Carter dismissed the complaint as time barred under the New York Statute of Limitations, N.Y.Civ.Prac.Law Sec. 213 (McKinney Supp.1983). Appellants now assert for the first time that the Pennsylvania statute of limitations applies. Defendant protectively cross-appeals Judge Carter's conclusion that the court had personal jurisdiction over the Polish People's Republic.[1]
 
 BACKGROUND
 
 2
 In 1926, a representative of the Polish government contacted Mr. Andrew Mellon, the Pittsburgh financier, in an effort to secure financing for the construction of several thousand railroad cars. After extensive negotiations in Pittsburgh and New York, an agreement was reached and implemented through a two-part contract. The first contract, executed on December 6, 1929, between Poland and the Polish firm of Lilpop, Rau and Lowenstein ("Lilpop"), provided that Lilpop would manufacture the cars and receive payment, in part, in Polish Treasury notes. This agreement expressly acknowledged that Lilpop would, in turn, sell the notes to Standard. The resultant contract between Lilpop and Standard, executed on February 5, 1930, provided that Standard would purchase the Treasury notes and acquire Lilpop's interest in the railway cars as security.
 
 
 3
 Standard redeemed the notes as they fell due at the New York City offices of National City Bank until October, 1936, when Poland defaulted. The parties renegotiated the debt and signed a new agreement on September 28, 1937. That agreement called for the cancellation of 426 of the outstanding notes and the issuance of 78 new notes bearing a lower interest rate. The old and new notes were exchanged on March 1, 1938 and the latter were made payable at National City Bank (now Citibank, N.A.). Between April, 1938 and April, 1939, Standard redeemed nine of the new notes. Poland defaulted in October, 1939, as World War II began. Sixty-nine new notes having a face value of $5,294,036.98 were left outstanding.
 
 
 4
 After the war, the Polish Mission of Restitution conducted a search for 5038 railway cars which had been pledged as security to Standard. The search yielded 115 railway cars which were subsequently nationalized by the defendant.
 
 
 5
 In 1960, Poland and the United States concluded an agreement whereby Poland would pay the United States $40 million over 20 years as satisfaction for the claims of American nationals whose property had been nationalized after the war.[2] In 1964, Standard filed a claim with the Foreign Claims Settlement Commission ("FCSC") seeking to recover for the 115 nationalized railway cars. Between 1964 and 1980, the FCSC paid Standard $88,000 out of the $40,000,000 fund. In exchange, Standard returned 10 of the 69 outstanding notes to Poland with a face value of $820,000.
 
 
 6
 Standard also filed a claim with the FCSC pursuant to Title II of the War Claims Act of 1948, 50 U.S.C. App. Sec. 2017a (1976). This claim sought compensation for the 4923 railway cars lost or destroyed during the War. Standard received an award in the amount of $5,132,814.55. Partial payment of that award was made in the amount of $3,150,285.32 on October 6, 1967. The funds used to pay the award were derived from the sale of German and Japanese assets in the United States, and no part of the payment was made by Poland.
 
 
 7
 In 1972, a trust was created under Pennsylvania law to manage Standard's claims. Between 1972 and 1982, the Mellon National Bank and Trust Company acted as trustee with respect to that company's claim against the Polish government. The current trustees were appointed in 1982 and are residents of Pennsylvania. Standard, however, is a Delaware corporation.
 
 
 8
 In October, 1980, Henry J. Clay, Esquire, representing the Standard trustees, met with Jan Boniuk, an advisor to the Polish Ministry of Finance. Because Poland's records regarding the history of Standard's claim were scanty, Mr. Clay provided the Polish government with a memorandum setting forth the background to Standard's claim. No settlement was reached. Aside from the payments pursuant to the 1960 FCSC settlement, Poland has made no payments in connection with the Treasury notes or railway cars since 1939.
 
 
 9
 In December, 1982, Standard's trustees filed this action seeking payment on the 59 outstanding notes, which have a face value of $4,474,036.98. Adding interest from October, 1939, plaintiffs demanded judgment for over $15,000,000. Poland moved to dismiss on the grounds that (i) the court lacked jurisdiction over the subject matter; (ii) the court lacked jurisdiction over Poland; (iii) venue was improper; and (iv) the action was time barred by the applicable statute of limitations. The trustees cross-moved to strike the affirmative defenses and for judgment on the pleadings or, in the alternative, for summary judgment. Affidavits fleshing out relevant facts were submitted by both parties. In its brief and argument before Judge Carter, Standard maintained that New York law governed the relationship of the parties.
 
 
 10
 Judge Carter found that he had jurisdiction over the subject matter, statutory jurisdiction over the defendant, and that venue was properly in the Southern District of New York. However, he dismissed the complaint on the ground that it was time barred by New York's statute of limitations. The trustees appeal from the dismissal of the complaint and now maintain that Pennsylvania's statute of limitations governs. Poland argues that Judge Carter correctly dismissed the complaint under New York's statute of limitations but that he erred in concluding that he possessed in personam jurisdiction.
 
 
 11
 We hold that plaintiffs, having consistently taken the position in the district court that New York law applies, may not now assert that Pennsylvania's statute of limitations governs. We hold further that the action is time barred under New York law.
 
 DISCUSSION
 
 12
 (a) Choice of Law
 
 
 13
 In rendering his decision Judge Carter stated that "[t]he parties agree that New York's six year statute of limitations governs this action," Schmidt v. Polish People's Republic, 579 F.Supp. 23, 28 (S.D.N.Y.1981). This statement was based on the fact that the various issues in the case were expressly briefed and argued by plaintiffs under New York law. In their papers in the district court, plaintiffs exhaustively established the extensive New York contacts with this bond financing, argued that under the applicable conflict of laws rules the law of the place of performance, New York, governs, Reply Memorandum of Law for Plaintiff at 6, and argued further that
 
 
 14
 while the trustees admittedly are residents of Pennsylvania and had the option of bringing this action in ... Pennsylvania, plaintiffs determined that the more substantial and significant contacts occurred in the city of New York. Since ... the vast majority of the significant contacts were in New York .... [t]he interest of the State of New York demands that its law be applied. Id. at 9-10.
 
 
 15
 Plaintiffs first asserted their intention to argue that Pennsylvania law applied in a letter to staff counsel of this court after a pre-argument conference. This new claim cannot be asserted on appeal.
 
 
 16
 A party generally may not raise claims on appeal which it failed to raise before the trial court. Terkildsen v. Waters, 481 F.2d 201 (2d Cir.1973); United States v. Vitasafe Corp., 352 F.2d 62 (2d Cir.1965). This is true whether the appeal follows a full factual trial or whether the new appellate claim is a purely legal question following a summary dismissal proceeding. List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir.1965), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965), accord, Glona v. American Guarantee & Liability Insurance Co., 379 F.2d 545 (5th Cir.1967). While this bar to raising new issues on appeal is not absolute, Green v. Brown, 398 F.2d 1006 (2d Cir.1968), it may be overcome only when necessary to avoid manifest injustice. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1940); United States v. L.N. White & Co., 359 F.2d 703 (2d Cir.1966). No such potential injustice is present here. Plaintiffs marshalled by way of affidavit facts to support a finding of substantial New York contacts with this bond financing. We perceive no reason to permit this strategically motivated attack on a conclusion of the district judge which plaintiffs have heretofore encouraged.
 
 
 17
 (b) The New York Statute of Limitations
 
 
 18
 We turn now to appellants' claim that the New York statute of limitations does not bar the instant action.
 
 
 19
 N.Y.Civ.Prac.Law Sec. 207 (McKinney 1972) provides that the statute of limitations is tolled while the defendant is absent from the jurisdiction. Plaintiffs offer the inventive argument that prior to January 19, 1977, the effective date of the FSIA, Poland could not be served with process and, therefore, was absent from the jurisdiction. Since the instant action was commenced on December 1, 1982, it was brought, they claim, within the six year limitation. We disagree.
 
 
 20
 Plaintiffs' argument construes the FSIA as reviving all claims, however dormant, existing against foreign governments at any time before its passage. We believe this infuses the Act with consequences wholly uncontemplated by Congress. While the Act indisputably enhances a party's capacity to obtain personal jurisdiction over a foreign state, see H.R.Rep. No. 94-1487, 94th Cong., 2d Sess. 16, reprinted in 1976 U.S.Code Cong. & Ad.News 6604, 6606 ("House Report"), nothing in its language or legislative history indicates that such wholesale reactivation of ancient claims was intended. Moreover, since the "Tate Letter" of 1952, 26 Dept. of State Bulletin 984 (1952), foreign sovereign immunity had not extended to the commercial activity of a foreign state, such as is involved here, Gilson v. Republic of Ireland, 682 F.2d 1022 (D.C.Cir.1982), and Congress had no reason whatsoever to believe that it was reviving otherwise dormant claims based on such activity.
 
 
 21
 The Court of Appeals for the District of Columbia Circuit considered and rejected a similar argument in Gilson, 682 F.2d at 1025. The court held there that while the FSIA may have improved the plaintiff's likelihood of success on the merits by removing procedural obstacles to instituting the action, it has been clear that such an action could have been maintained since the "Tate Letter," and is thus subject to the statute of limitations.
 
 
 22
 Furthermore, N.Y.Civ.Prac.Law. Sec. 207 provides that where other means of service of process are provided by law, the statute is not tolled by the defendant's absence. The burden is on the plaintiff to attempt such service, Yarusso v. Arbotowicz, 41 N.Y.2d 516, 362 N.E.2d 600, 393 N.Y.S.2d 968 (1977), Goodemote v. McClain, 40 A.D.2d 22, 337 N.Y.S.2d 79 (4th Dept.1972), a burden which the plaintiffs in the instant case have failed to shoulder. Ten years before the enactment of the FSIA, we held that aggrieved parties could bring in personam actions against foreign governments for their commercial activity and fashioned an appropriate procedure for service of process under Fed.R.Civ.P. 83. Petrol Shipping Corp. v. Kingdom of Greece, Ministry of Commerce, 360 F.2d 103 (2d Cir.1966). See generally, 4 Wright & Miller, Federal Practice & Procedure Civil Sec. 1111 (1969). Nevertheless, plaintiffs have made no attempt whatsoever at service of process prior to the instant action.
 
 
 23
 Finally, we note that tolling a statute of limitations because of defendant's absence from a jurisdiction is largely intended to diminish the incentive to avoid service of process. In the instant case, however, Poland is as "absent" as it ever was or ever will be. Whatever impediments to suit or service may have existed were due to provisions of American law rather than geographic location and the applicability of N.Y.Civ.Prac.Law Sec. 207 to the present case is thus doubtful.
 
 
 24
 Plaintiffs alternatively argue that the statute has been tolled by Poland's acknowledgement of the debt (i) by the listing of the Treasury notes as state debts in 1939, 1940 and 1946; (ii) by a 1960 letter from a Polish plenipotentiary to an Assistant Secretary of State acknowledging Poland's intent to consider the claims of the American bondholders; (iii) by the 1980 Warsaw meetings between plaintiffs' attorney and Mr. Boniuk; and (iv) by the 1960 agreement between Poland and the FCSC and the resultant installment payments between 1964 and 1980. Only the 1980 meeting and the more recent installment payments fall within the statutory period.
 
 
 25
 Since an acknowledgement of debt sufficient to toll the New York statute of limitations must be in writing and signed by the party to be charged, N.Y.Gen.Oblig.Law Sec. 17-101 (McKinney 1978), and no such writing resulted from the 1980 meeting, the statute was not tolled by that encounter. The claim that the 1964-1980 installment payments by Poland made pursuant to the FCSC tolled the statute must similarly fail. The statute can be tolled only if a debtor pays the creditor under circumstances indicating an unequivocal intention to pay the balance. Lew Morris Demolition Co. v. Board of Education of New York, 40 N.Y.2d 516, 355 N.E.2d 369, 387 N.Y.S.2d 409 (1976). The $88,000 paid in installments between 1960 and 1980 was expressly for the 115 nationalized cars rather than for the Treasury notes, was asserted to be a final settlement by Poland for nationalized property, and was not made to the creditor bondholders but directly to the FCSC. Moreover, the payments merely implemented the 1960 agreement. It is that agreement, rather than the payments, which, if anything, was an acknowledgement.
 
 
 26
 Finally, plaintiffs argue that the doctrine of equitable estoppel should bar Poland from raising the statute of limitations defense on the grounds that Poland's conduct led them to forego litigation in the false hope that the notes would be paid. This claim is utterly frivolous. The last act of Poland stating that it legally owed such money was its listing of the notes as state debts in 1946; the last unequivocal payment was in 1939. Indeed, plaintiffs' application to the FCSC under the War Claims Act in 1964 stated that Poland had denied any liability for payment and that the possibility of recovery from Poland was "remote," 579 F.Supp. at 30. As the district judge noted, "[t]hese statements are simply inconsistent with plaintiffs' present contention that they were deceived into sleeping on their rights," 579 F.Supp. at 30. The FCSC 1964-1980 payments were asserted by Poland in 1960 to be a final settlement of claims of American nationals. The 1980 meeting between plaintiffs' counsel and a minor Polish official produced nothing that assured the bondholders of Poland's intent to pay. Plaintiffs' exhaustive record of communications between Standard and Poland thus reveals only an undeviatingly recalcitrant debtor.
 
 
 27
 Since we affirm the dismissal of appellants' claim, we do not reach appellee's cross-appeal.
 
 
 
 *
 The Hon. Jacob Mishler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 Defendant Polish People's Republic is the successor government to the Republic of Poland
 
 
 [2]
 Treaty Between The Government of the United States of America and The Government of the Polish People's Republic Regarding Claims of American Nationals, July 16, 1960, United States-Polish People's Republic, 11 U.S.T. 1953 ("Polish Claims Agreement")