In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2252

Thomas F. Grojean and Therese Grojean,

Petitioners-Appellants,

v.

Commissioner of Internal Revenue,

Respondents-Appellees.

Appeal from the United States Tax Court.
No. 14374-98--David Laro, Judge.

Argued December 1, 2000--Decided April 13, 2001

Before Posner, Diane P. Wood, and Williams, Circuit
Judges.

Posner, Circuit Judge. The question presented by
this appeal from a decision by the Tax Court is
whether that court committed a clear error in
characterizing Thomas Grojean's participation
interest in a loan made by American National Bank
to Grojean's Subchapter S corporation, Schanno
Acquisition, Inc., as a guaranty.

Grojean had formed Schanno Acquisition in order
to buy a trucking company from Transamerica
Leasing Corporation. The price was a shade under
$14 million. To finance the purchase, Grojean
turned to American National Bank. He asked to
borrow $11 million from the bank, which was
willing but insisted that he personally guarantee
the loan. He refused, but continued negotiating
with the bank, and eventually they worked out a
deal by which the bank would make two loans to
Schanno, aggregating $10 million, plus a $1.2
million loan to Grojean conditioned on his
purchasing a $1.2 million participation in one of
the bank's loans to Schanno, a loan for $8.4
million. The participation agreement subordinated
Grojean's interest in that loan to the bank's.
The interest rate was the same on both the $8.4
million bank loan to Schanno in which Grojean
participated and the $1.2 million bank loan to
Grojean, and it was agreed that he would receive
no payments on his participation interest until
the bank was repaid its share of the $8.4 million

loan. Thus, if Schanno repaid the $8.4 million loan in accordance with its terms Grojean would neither be out of pocket any cash nor receive any cash--his participation interest in that loan, and the bank's loan to him, would cancel each other out--while if Schanno defaulted, Grojean would have to make good on the bank's loss up to $1.2 million, the amount the bank had lent him.

 Although Schanno did not default, it did lose money, and Grojean wanted to deduct those losses on his federal income tax return, since the gains and losses of Subchapter S corporations pass through to the shareholders. But he could do this only to the extent of his investment in Schanno, consisting of the adjusted basis of his stock plus any indebtedness of the corporation to him. 26 U.S.C. sec. 1366(d)(1). He treated his participation interest in the bank's $8.4 million loan to Schanno as a $1.2 million indebtedness of Schanno to him and it is this move that the Tax Court rejected. It did so on the alternative grounds that (1) the participation interest was really a guaranty, not a loan, and (2) if a loan it was a loan to American National, not to Schanno. The parties agree that a guaranty is not an investment for purposes of section 1366(d)(1).

 A lender like a guarantor assumes a risk of default and by doing so reduces the risk borne by any creditor to whose interest the loan is subordinated. From American National's standpoint it was irrelevant whether Grojean guaranteed $1.2 million of the bank's loan to Schanno or took a subordinated $1.2 million participation interest in that loan. Lenders differ from guarantors, however, in doing more than assuming risk: they procure funds for the use of the borrower (often just to replace a previous loan, but that of course is a use by the borrower of the newly borrowed funds). Grojean did not procure $1.2 million for the use of Schanno, as he would have done had he gone to a bank or other lender, borrowed $1.2 million from it, and written a check for that amount to Schanno. Instead the $1.2 million that Grojean "lent" Schanno was a slice of the $8.4 million loan that the bank made to Schanno. The only significance of Grojean's "loan," since it involved no transfer of money from him to Schanno or any other entity, was that it operated to guarantee that amount of American National's loan. Functionally, it was not a loan or loan participation at all, but a guaranty, and so the Tax Court committed no error, clear or otherwise, in reclassifying it as a guaranty. Otherwise a taxpayer could, by the kind of restructuring engineered here, obtain for a guaranty a tax advantage intended for a loan or other indebtedness.

The difference between a loan and a guaranty may seem a fine one, since, when the amount is the same, the lender and guarantor assume the same risk (subject to a possible wrinkle, concerning bankruptcy, discussed later). The difference between the two transactional forms may seem to amount only to this: the loan supplies funds to the borrower, and the guaranty enables funds to be supplied to the borrower. That is indeed the main difference, but it is not trivial or nominal ("formal"). As explained in Avery Katz, "An Economic Analysis of the Guaranty Contract," 66 U. Chi. L. Rev. 47, 113-14 (1999), the three-cornered arrangement (borrower, lender, guarantor) created by a guaranty makes economic sense only if the lender has a comparative advantage in liquidity (that is, in being able to come up with the money to lend the borrower) and the guarantor a comparative advantage in bearing risk. Otherwise the additional transaction costs of the more complex arrangement would be uneconomical.

At a high enough level of abstraction, it is true, the difference between providing and enabling the provision of funding may disappear. Indeed, at that level, the difference between equity and debt, as methods of corporate financing, disappears. See Franco Modigliani & Merton H. Miller, "The Cost of Capital, Corporation Finance and the Theory of Investment," 48 Am. Econ. Rev. 361 (1958). But at the operational level, because of various frictions that some economic models disregard, such as transaction and liquidity costs, there really is a substantive and not merely a formal difference between lending and guaranteeing. In contrast, the difference between a guaranty and the form that Grojean's loan participation assumed was nothing but the label. It was a purely formal difference, and in federal taxation substance prevails over form. Gregory v. Helvering, 293 U.S. 465 (1935); Williams v. Commissioner, 1 F.3d 502, 505 (7th Cir. 1993); Yosha v. Commissioner, 861 F.2d 494, 498-99 (7th Cir. 1988); Boris I. Bittker & James S. Eustice, Federal Income Taxation of Corporations and Shareholders sec. 1.05[2][b] (7th ed. 2000).

If a transaction has "economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached, the Government should honor the allocation of rights and duties effectuated by the parties." Frank Lyon Co. v. United States, 435 U.S. 561, 583-84 (1978). "Business realities" cast Grojean in the role of guarantor rather than lender; no business

realities compelled him to recharacterize his guaranty as a loan participation. The Internal Revenue Service was therefore entitled to recharacterize the participation as a guaranty, in much the same way that it is entitled to recharacterize a shareholder's loan to his corporation as an equity investment if the "loan" label has no economic significance. Bittker & Eustice, supra, sec. 1.05[2][b], p. 1-20. (In some cases, tax considerations will point the taxpayer the other way, toward recharacterizing a loan as a guaranty. See Katz, supra, at 89.)

We pressed Grojean's counsel at argument to explain what functional--substantive--practical-- difference there was between a guaranty by Grojean of $1.2 million of American National's $8.4 million loan to Schanno and Grojean's $1.2 million participation interest in that loan. He gave two answers. The first was that the participation interest must have been worth more to American National than a guaranty of the same amount would have been (and so these could not be the same animals however much they resemble each other), because the bank allowed Grojean to substitute a $1.2 million participation interest for an $11 million guaranty. Several points are ignored. The bank's request for that guaranty was just the opening bid in a negotiation, and there is nothing in the record to indicate whether the bank would have held out for such a guaranty, which Grojean plainly was unwilling to give the bank, to the end of the negotiation. The terms of the ultimate deal between Schanno and American National may have been more favorable to American National in other dimensions besides guaranties, such as interest rates and security, than the deal first discussed, another issue on which the record is silent. And Grojean has been unable to explain on what possible basis a $1.2 million participation could be worth more to the bank than an $11 million guaranty by the same person.

The second answer that Grojean's counsel gave to our question was that the participation mode would be more advantageous to Grojean if Schanno was forced into bankruptcy during the six-year term of the bank's loan to it. Had Grojean guaranteed $1.2 million of that loan and Schanno defaulted, Grojean after paying off the bank to the limit of the guaranty would under normal principles of suretyship have had a $1.2 million claim for reimbursement from Schanno. But if Schanno paid Grojean any part of such a claim, the payment would be a preference to an insider creditor (because Grojean owns Schanno), so that if Schanno declared bankruptcy within a year of the payment Grojean would have to return it to the debtor (or the trustee in bankruptcy, if one was appointed) and take his place in line with

the other creditors. 11 U.S. sec. 547 (b)(4)(B); Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1160 (7th Cir. 1997); In re Vitreous Steel Products Co., 911 F.2d 1223, 1238 n. 6 (7th Cir. 1990); Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1188 (7th Cir. 1989); In re Dorholt, Inc., 224 F.3d 871, 873-74 (8th Cir. 2000). If instead he had a participation interest in the bank's loan, he would technically not be a creditor of Schanno (since it was the bank's loan, not his), and so the normal 90-day preference period would apply. Or so Grojean argues--for the bankruptcy court, just like the Tax Court here, might reclassify the participation interest as a guaranty, making the guarantor (Grojean) a creditor of Schanno once he made good on the guaranty. Cf. Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890, 894-96 (7th Cir. 1988). For bankruptcy too has a "substance over form" doctrine. In re Zedda, 103 F.3d 1195, 1203-04 (5th Cir. 1997); Brockington v. Scott, 381 F.2d 792, 794 (4th Cir. 1967).

We need not consider the applicability of that doctrine (on which see Douglas G. Baird, The Elements of Bankruptcy 188-89 (rev ed. 1993)) to Schanno's hypothetical bankruptcy. Grojean's bankruptcy argument does not identify a functional difference between an outright guaranty and the loan participation. It identifies a merely formal difference that Grojean hoped a bankruptcy court would not see through. This is not to deny that the seeking of a legal advantage can lend substance to the choice of a transaction form. The choice to do business in the corporate form is not treated as an empty formality merely because the motive may be to obtain (legally) limited liability for the shareholders. But that formality has itself a substantive purpose, that of facilitating the raising of capital by protecting investors from unlimited personal liability for the venture's debts. The advantage in bankruptcy that Grojean sought by structuring his guaranty as a loan participation was, in contrast, a pure smokescreen--an endeavor to conceal his insider status by having his loan to Schanno laundered by American National.

Grojean's bankruptcy argument shows up the futility of another argument of his, that previous cases of successful efforts by the Internal Revenue Service to get loan participations reclassified as guaranties involved affiliated entities. See, e.g., Bergman v. United States, 174 F.3d 928, 932-33 (8th Cir. 1999); Reser v. Commissioner, 112 F.3d 1258, 1264 (5th Cir. 1997); Wilson v. Commissioner, 1991 T.C. Memo 91,544. If Grojean owned American

National Bank, he would endeavor to structure any transaction between him and it in a way that would minimize his tax liability while maximizing his rights in the event of bankruptcy. But he would do this whether or not he had any control over the bank. The bank would not resist. It has no incentive to protect either the taxing authorities or the other creditors of Schanno from a deal that minimizes Grojean's tax liability and bankruptcy risks. On the contrary, to the extent that structuring the deal in this way would be valuable to Grojean, going along with it would enable the bank to get better terms from him.

Grojean's invocation of bankruptcy actually strengthens the Tax Court's alternative ground for refusing to classify the $1.2 million loan participation as an indebtedness of Schanno to Grojean. The alternative ground, recall, is that whatever the economic realities, Grojean technically was not a lender to Schanno; only American National was. Schanno neither had a loan agreement with Grojean nor issued him a promissory note. In a loan participation, the lead bank or other lead lender is the only lender; the participants have a contractual relation only with that bank. See, e.g., First National Bank v. Continental Illinois National Bank & Trust Co., 933 F.2d 466, 467 (7th Cir. 1991); In re Pearson Bros. Co., 787 F.2d 1157, 1161-62 (7th Cir. 1986); Carondelet Savings & Loan Ass'n v. Citizens Savings & Loan Ass'n, 604 F.2d 464 (7th Cir. 1979); Den Norske Bank AS v. First Nat'l Bank, 75 F.3d 49, 51 n. 2 (1st Cir 1996); Penthouse Int'l, Ltd. v. Dominion Federal Savings & Loan Ass'n, 855 F.2d 963, 967 (2d Cir. 1988). The bank sells shares of the loan to the participants, as one might sell shares in a corporation.

Grojean cries foul. If the government can ignore the form of his "guaranty," reclassifying it from a loan participation to a guaranty on the basis of its economic substance, why shouldn't he be allowed to reclassify his loan participation interest as a loan by him to Schanno, since there is (he argues) no functional difference between the two characterizations? The answer is that the doctrine of substance over form allows only the government to recharacterize a transaction in accordance with its commercial significance. Commissioner v. Court Holding Co., 324 U.S. 331, 334 (1945); Gregory v. Helvering, supra; Continental Illinois Corp. v. Commissioner, 998 F.2d 513, 519 (7th Cir. 1993); Yosha v. Commissioner, supra, 861 F.2d at 497-98; Twenty Mile Joint Venture, PND, Ltd. v. Commissioner, 200 F.3d 1268, 1277 (10th Cir. 1999). The cases assume rather than state this, but the assumption

is sound. Bittker & Eustice, supra, sec. 1.05[2][b], p. 1-21. The taxpayer's position and the government's position in relation to the use of transactional forms are asymmetrical. It is the taxpayer rather than the government that chooses the form. He can choose whatever form seems apt to his purposes, but he is bound by his choice; he cannot take the benefits of the form but slough off the costs by asking that the transaction be recharacterized.

The Bittker treatise suggests there may be an exception to the onesidedness of the substance over form doctrine, citing Bartels v. Birmingham, 332 U.S. 126 (1947). In that case the Supreme Court allowed a dance hall whose contract with the members of its dance bands described them as employees of the hall to prove that really the dance bands were independent contractors and the members of the bands were their employees, not the dance hall's, and so the dance hall wasn't liable to pay social security tax. The Court treated it as a case in which the IRS had simply identified the wrong firm as the employer and hence as the taxpayer. There is no suggestion in this case that the IRS is picking on the wrong person.

Even if a taxpayer could sometimes use the doctrine of substance over form (as we doubt, outside the narrow class of cases delimited by Bartels), he could not use it in a case in which he was trying both to employ the form to defeat substance and the substance to defeat the form. That is what Grojean is trying to do. He is trying to use substance to defeat form in this tax case, so far as the Tax Court's alternative ground (that a loan participant is not the lender to the borrower of the loan), but he claims that he would have been entitled to use form to defeat substance had Schanno declared bankruptcy. Remember that the theory by which structuring the $1.2 million guaranty as a loan participation would give Grojean an advantage in bankruptcy is that as a loan participant he would technically not be a creditor of Schanno and therefore he would escape the one-year extended preference period for insider creditors of a bankrupt firm. He cannot have it both ways: if his technicality works in bankruptcy, it binds him in tax. If it fails in bankruptcy, this still leaves the Tax Court its first ground, that the loan participation was in reality a guaranty.

Affirmed.