# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-1501

_____

| | | |
|---|---|---|
| Estate of Alton Bean, Deceased; Gary A. Bean, Administrator; Mable Bean, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | Appeal from the |
| _____ | * | United States Tax Court. |
| | * | |
| Gary A. Bean; Cynthia Bean, | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 10, 2001
Filed: October 1, 2001

_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

The shareholders of an S corporation appeal the United States Tax Court's[1] decision upholding deficiencies assessed against them based on net operating losses incurred by the S corporation and passed through to the individual shareholders. Although not a shareholder of the S corporation, Cynthia Bean also appeals, as deficiencies were assessed against her because she filed a joint tax return with her husband, Gary Bean, one of the shareholders. The Internal Revenue Service (hereinafter "IRS") disallowed the losses claimed on the taxpayers'[2] individual tax returns to the extent the losses exceeded the shareholders' respective bases in the S corporation. The tax court upheld the deficiencies, and we now affirm the tax court's judgment.

I.

Alton Bean Trucking, Inc., a corporation electing treatment under subchapter S of the Internal Revenue Code, experienced net operating losses of $1,190,460 and $482,481 for the tax years of 1990 and 1991, respectively. The shareholders of Alton Bean Trucking, Inc., Alton Bean (now deceased), Mable Bean, and Gary Bean (collectively referred to herein as "shareholders"), claimed their pro rata share of those losses on their individual tax returns for the years 1987 through 1992, by way of loss carrybacks and carryforwards. The IRS disallowed the losses as exceeding the shareholders' respective bases in the S corporation and assessed tax deficiencies against Alton and Mable Bean and against Gary and Cynthia Bean. Gary (in his capacity as

_____

[1]The Honorable Stephen J. Swift, United States Tax Court.

[2]References to "taxpayers" include each of the individuals against whom the deficiencies were filed: Alton Bean, Mable Bean, Gary Bean, and Cynthia Bean.

2

the administrator of his father's estate) and Mable appealed the assessments issued against Alton and Mable, and Gary and Cynthia appealed the assessments issued against them to the tax court, which consolidated the two cases for trial and disposition. The Beans argued that certain transactions increased their respective bases in the S corporation, which would allow them to recognize more of the corporation's losses on their own tax returns. The tax court rejected their arguments and upheld the assessments.

## II.

We review the tax court's fact findings for clear error and its legal conclusions de novo. McNamara v. Comm'r, 236 F.3d 410, 412 (8th Cir. 2000). The taxpayers bear the burden of proving that they are entitled to deductions for an S corporation's losses that are passed through to the shareholders. Parrish v. Comm'r, 168 F.3d 1098, 1101 (8th Cir. 1999).

An S corporation is referred to as a passthrough entity because the items of income and expense are not taxed at the corporate level, but are passed through to each shareholder in his or her pro rata share, which shareholder then reports the income and expenses on his or her individual tax return. A shareholder is limited in the amount of loss flowing from the S corporation that he or she may recognize on his or her individual tax return in a given year to the sum of the adjusted basis of the shareholder's stock and the adjusted basis of any indebtedness owed to the shareholder from the corporation. I.R.C. § 1366(d)(1), 26 U.S.C. § 1366(d)(1) (1994). Any loss disallowed by reason of section 1366(d)(1) is carried forward indefinitely until the shareholder has sufficient basis in stock and indebtedness to recognize the loss. I.R.C. § 1366(d)(2). In this case, the shareholders were denied net operating losses that they had reported on their individual tax returns for losses that Alton Bean Trucking, Inc. experienced in 1990 and 1991 because the shareholders each had inadequate basis in stock and indebtedness under section 1366(d)(1). The taxpayers argue that certain transactions

3

should have increased the shareholders' bases and that they should have been allowed to recognize at least a portion of the S corporation's losses from 1990 and 1991.

The first of the disputed transactions surrounds the transfer of assets to the S corporation from a related entity operated by the Beans. Alton and Gary Bean operated a trucking company in Amity, Arkansas. Alton owned 75% interest in of the business and Gary owned the remaining 25% interest. Although Alton and Gary reported their respective shares of the income and expenses of the business on Schedule C (for sole proprietors) filed with their individual tax returns, they treated the business as a partnership under the name of Alton Bean Trucking Company (hereinafter "Company"). In 1988, the Beans formed an S corporation named Alton Bean Trucking, Inc. (hereinafter "Inc."). Alton owned 50% of the corporate stock, his wife Mable owned 25%, and Gary owned 25%. They continued to run both companies through 1992. Pursuant to a written agreement dated December 31, 1992, Company sold all of its assets, except a receivable due from Inc. to Inc., and Inc. assumed all of Company's liabilities. No cash exchanged hands. For tax purposes, Company treated the liabilities assumed by Inc. as equal to Company's tax basis in the assets transferred so that neither Company nor Alton and Gary reported any income or loss on the sale.

The taxpayers now argue that there was equity in the assets transferred from Company to Inc., which assets were allegedly owned by Alton and Gary individually, and that the equity should be recognized as capital contributions by Alton and Gary to Inc., which would in turn increase their respective bases in Inc. We reject this argument for two reasons. First, the transfer of assets was from Company to Inc. rather than from the individual partners to Inc. Thus, to the extent that there was any equity in the assets, the equity was that of the partnership, not the individual partners. The partnership was an entity distinct from its partners, and the partners cannot bootstrap

4

their bases in the corporation by transfers made by the partnership.[3] See Bergman v. United States, 174 F.3d 928, 932 (8th Cir. 1999) ("No basis is created for a shareholder . . . when funds are advanced to an S corporation by a separate entity, even one closely related to the shareholder."); Frankel v. Comm'r, 61 T.C. 343, 348 (1973) (holding that a loan from a partnership to an S corporation did not increase the shareholders' bases, even though the partners of the partnership were also the shareholders of the S corporation), aff'd, 506 F.2d 1051 (3d Cir. 1974) (unpublished). The fact that the partnership was dissolved following the sale in 1992 does not change the form of the transaction that the taxpayers chose to utilize–selling the assets from the partnership to the corporation. Once chosen, the taxpayers are bound by the consequences of the transaction as structured, even if hindsight reveals a more favorable tax treatment. Grojean v. Comm'r, 248 F.3d 572, 576 (7th Cir. 2001).

We also reject the taxpayers' argument because they have failed to meet their burden of establishing that there was in fact equity in the assets. See Parrish, 168 F.3d at 1102 (holding that taxpayer bears burden of establishing his basis in S corporation). The partners avoided tax on the sale of the assets by treating the assets as equal in value to the liabilities assumed by Inc. Irrespective of who owned the assets, the taxpayers have provided no evidence that the assets were worth more than the liabilities assumed by Inc. to support their assertion that there was equity in the assets transferred to Inc. Thus, the shareholders are not entitled to increased bases for any alleged equity in assets sold by Company to Inc.

Between 1988 and 1992, Company provided services and parts to Inc. and leased trucks to Inc. Following the sale of Company's assets to Inc., Company's only

[3]Although the taxpayers suggest that Company was not really an entity separate from Alton and Gary as individuals, Company's accountant prepared financial statements for Company as a whole, and the taxpayers stipulated before the tax court that Company was a partnership. Further, the purchase agreement stated that Company was selling the assets, not the individual partners.

asset listed on its December 31, 1992, financial statement was a receivable from Affiliate (Inc.) in the amount of $284,618. Alton and Gary argue that they are entitled to increases in their bases for the amount of the receivable because they were never paid for the services and lease payments, which made up the receivable. This argument fails for the same reason as the first argument. Any transactions that purportedly made up the balance of the receivable were between Company and Inc. Thus, the balance in the receivable could not increase the individual shareholders' bases. Bergman, 174 F.3d at 932; see also Hitchins v. Comm'r, 103 T.C. 711, 715 (1994) ("[T]he indebtedness of the S corporation must run directly to the shareholders: an indebtedness to an entity with passthrough characteristics which advanced the funds and is closely related to the taxpayer does not satisfy the statutory requirements [of § 1366(d)].").

The taxpayers cannot establish that the shareholders are entitled to an increase in basis unless the receivable was distributed by the partnership to the individual partners and then contributed to Inc. or otherwise assumed by the individual partners. The taxpayers have offered no such evidence. As such, we cannot say that the tax court clearly erred in finding that the receivable was owed to the partnership rather than to the individual partners. The only documentary evidence actually favors the opposite conclusion, that is, that the taxpayers continued to treat the receivable as one owed by Inc. to Company, not to the individual partners. Inc.'s December 31, 1992, financial statement following the sale of the Company assets reflects the amount owed to Company as a liability "Due to Affiliate," although Inc. also reported amounts in an account titled "Due to Officers." If the taxpayers had intended the receivable to run from Inc. to the individuals, we would expect to see the amount included in the "Due to Officers" account rather than the "Due to Affiliate" account. The shareholders have failed to establish that they contributed anything to Inc. related to the amounts allegedly owed from Inc. to Company but never paid.[4]

---

[4]The tax court also found that the taxpayers failed to substantiate the amount allegedly owed from Inc. to Company for parts, service, and lease payments. We

The final transaction that the taxpayers argue should increase the shareholders' bases in Inc. relates to loans that Inc. received from the Bank of Amity that were secured by real estate owned by the taxpayers. The Bank of Amity extended a $600,000 line of credit to Inc. in 1992 and took personal guarantees from Alton and Gary, as well as a mortgage from Alton and Mable and from Gary and Cynthia for real estate owned by them personally. Alton and Mable also gave the bank a second mortgage in 1990 in the amount of $960,019 to secure Inc.'s indebtedness to the bank. The taxpayers acknowledge that the loans were made directly from the Bank of Amity to Inc. but argue that by giving mortgages on their personally owned real estate, the shareholders have suffered an "economic outlay" sufficient to create basis in Inc.

To be entitled to an increase in basis, the shareholders must show that the mortgages on their personal real estate either increased their stock basis, i.e., the shareholders contributed the real property to the S corporation, or created a debt from the S corporation to the shareholders. See I.R.C. § 1366(d)(1). The economic outlay doctrine is one way of showing that a loan involving a third party is actually a loan from the shareholder to the corporation. However, for the doctrine to apply, the shareholder "must make an actual economic outlay to increase his basis in an S corporation." Bergman, 174 F.3d at 932. The transaction, when fully consummated, must leave "the taxpayer poorer in a material sense" before a transaction increases a shareholder's basis. Id. (internal quotations omitted) (remanding based on fact issue of whether loan to corporation, which was then restructured as loan to shareholder who then made loan to corporation, resulted in an economic outlay by the shareholder).

---

likewise cannot say that the tax court clearly erred in making this finding, as the only evidence offered is testimony by Cynthia Bean, who worked for Inc., that "by logic, it [the receivable account] would probably– I don't know exactly but I would assume that it is–it would probably entail the rental, possibly the parts." (J.A. at 648.)

7

The taxpayers concede that a mere guaranty of a corporate loan is insufficient to give them basis for the amount of the loan, and we agree. See Harris v. United States, 902 F.2d 439, 445 (5th Cir. 1990); Leavitt v. Comm'r, 875 F.2d 420, 422 (4th Cir.) cert. denied, 493 U.S. 958 (1989). They argue, however, that by giving a mortgage on their real estate to secure Inc.'s loan, they have suffered an actual economic outlay. The Fifth Circuit has rejected such an argument. See Harris, 902 F.2d at 445 & n.16 (holding that there was no economic outlay although shareholder pledged personally owned certificates of deposit); see also Calcutt v. Comm'r, 84 T.C. 716, 719-20 (1985) (rejecting argument based on at-risk rules of I.R.C. § 465 and holding that mortgage on personal residence to secure bank loan to S corporation did not increase shareholder's basis in S corporation). But see Selfe v. United States, 778 F.2d 769, 772-73 n.7 (11th Cir. 1985) (noting that "a guarantor who has pledged stock to secure a loan has experienced an economic outlay to the extent that that pledged stock is not available as collateral for other investments").

We agree with the Fifth Circuit that a shareholder's pledge of personally owned property, without more, is not an economic outlay and is insufficient to create basis in the S corporation. The purpose of the economic outlay doctrine is to determine whether the corporation is indebted to the shareholder, thus creating basis for the shareholder under section 1366(d)(1)(B) of the Internal Revenue Code. A personal guaranty creates basis only when the shareholder's duty under the guaranty is triggered; that is, when he is actually called upon to make good on the guaranty. See Harris, 902 F.2d at 445 ("[T]he wholly unperformed guarantees do not satisfy the requirement that an economic outlay be made . . .."); Leavitt, 875 F.2d at 422 ("[T]he appellants have experienced no such call as guarantors, have engaged in no economic outlay, and have suffered no cost."); Brown v. Comm'r, 706 F.2d 755, 757 (6th Cir. 1983) (holding that a guaranty was not an economic outlay until the shareholder personally satisfied at least a portion of the guaranteed debt). At that point, the corporation is indebted to the shareholder because the shareholder has actually paid the corporation's debt. This is consistent with section 1012 of the Internal Revenue Code, which states that the "basis

8

of property shall be the cost of such property," and the related tax regulations, which define a property's cost as the amount paid in cash or with other property. I.R.C. Reg. § 1.1012-1(a). See also Leavitt, 875 F.2d at 422 n.9 (relying on § 1012 and its regulations to hold that a personal guaranty does not create basis).

We believe that a mortgage or pledge of property is similar to a guaranty. A corporation is not indebted to the shareholder simply because the shareholder has mortgaged his property but becomes indebted only when the mortgage is called to satisfy the corporation's debt. At that time, the corporation is indebted to the shareholder because the shareholder has "paid" the corporation's debt "in other property." I.R.C. Reg. § 1.1012-1(a). Until the mortgage is called to satisfy the corporation's debt, however, we hold that the shareholder has not suffered an economic outlay and is not entitled to an increase in basis.

Finally, the taxpayers argue that they should be allowed to use the IRS's net worth calculations developed during the audit to increase the shareholders' bases in Inc. A net worth calculation is an indirect method of determining whether an entity has reported all of its income. If Inc. had additional income that it had not reported, then the shareholders' bases in Inc. would likewise increase. See I.R.C. § 1367(a)(1) (shareholder's basis is increased by his pro rata share of the S corporation's net income). During the audit, the IRS issued various "Income Tax Examination Changes" to the Beans. One such proposed change was based on the net worth calculations performed during the audit. The final changes that supported the assessed deficiencies were based on the actual tax returns filed by Inc. and were higher than the suggested changes based on the net worth calculations. The taxpayers argue that the net worth calculations should be afforded the same presumption of correctness when offered by the taxpayer as they are given when offered by the IRS and that the net worth calculations support an increase in the shareholders' bases.

The IRS agent who prepared the net worth calculations testified that the calculations were not reliable because he had not performed certain audit procedures necessary for a complete and accurate calculation. He also testified that he ultimately did not rely on the net worth calculations because he determined that Inc.'s income was accurate as reported. We reject the taxpayers' attempt to utilize the incomplete calculations merely because they are advantageous without further substantiating the calculations. The only evidence in the record is that the calculations are incomplete. The taxpayers cannot rely on the incomplete calculations to meet their burden of establishing the shareholders' bases, Parrish, 168 F.3d at 1102, without demonstrating the calculations' accurateness.

## III.

For the foregoing reasons, we affirm the tax court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.