T.C. Memo. 2003-327


UNITED STATES TAX COURT


WATERFALL FARMS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RODNEY F. HUBER AND POLLY HUBER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 5363-01, 5365-01.      Filed November 25, 2003.


<u>Douglas Bleeker</u>, for petitioners.

<u>Douglas Polsky</u> and <u>Charles Berlau</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  These cases have been consolidated for trial, briefing, and opinion.  In separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income

tax and accuracy-related penalties under section 6662[1] for 1995, 1996, and 1997 as follows:

Waterfall Farms, Inc., Docket No. 5363-01:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1995 | $184 | $37 |
| 1996 | 195 | 39 |
| 1997 | 2,507 | 501 |

Rodney F. and Polly Huber, Docket No. 5365-01:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1995 | $1,706 | -- |
| 1996 | 855 | -- |
| 1997 | 2,505 | -- |

The issues for decision are:

(1) Whether amounts paid by Waterfall Farms, Inc. (Waterfall Farms or the corporation), to provide medical care, food, and lodging to its shareholders, Rodney F. Huber (Mr. Huber) and Polly Huber (Mrs. Huber) (collectively the Hubers), and their daughter are (a) constructive dividends, as respondent maintains, or (b) employee medical care expenses and/or reimbursed employee expenses that are excluded from the Hubers' gross income and deductible by Waterfall Farms as ordinary and necessary business expenses, as petitioners maintain; and

---

[1]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

(2) whether Waterfall Farms is liable for the accuracy-related penalty under section 6662(a) for the taxable years ended November 30, 1995, 1996, and 1997.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

When the petitions were filed in these cases, the residence of the Hubers, as well as the principal place of business of Waterfall Farms, was in Fulton, South Dakota.

A.    The Hubers

The Hubers are husband and wife; they have three daughters. The Hubers live in a house (the farmhouse) on 6 acres (the homestead) that, until 1997, they leased from Emma Rose (Ms. Rose).  Between November 1989 and August 1992, the Hubers acquired four contiguous lots totaling 330 acres (the Huber farm).  The Huber farm consists of farmland and pasture on which the Hubers raise corn and livestock.  There are no houses on the Huber farm.

B.    Waterfall Farms

The Hubers executed articles of incorporation for Waterfall Farms on March 11, 1994.[2]  The articles were filed with the

---

[2]Douglas Bleeker, counsel for petitioners, prepared the articles of incorporation, minutes of meetings, and other
(continued...)

secretary of state of South Dakota on March 22, 1994. The Hubers conveyed the Huber farm to Waterfall Farms by deed, dated March 10, 1994, that was filed in the Hanson County register of deeds on March 28, 1994.

The Hubers have been the sole shareholders, officers, and directors of Waterfall Farms since its incorporation. Mr. Huber has been president, treasurer, and a director, and Mrs. Huber has been vice president, secretary, and a director, of Waterfall Farms.

Article IV, section 10, of the bylaws of Waterfall Farms provides:

> SECTION 10. <u>Repayment of Disallowed Expenses</u>. Any expense paid by the Corporation which is finally determined as a personal expense of any officer or employee and disallowed as Corporation expense shall be repaid by the officer or employee to the Corporation within Twenty-four (24) months of the final determination by the Internal Revenue Service with interest at Three (3%) below the New York Prime Rate on the date of final determination.

The first meeting of the board of directors of Waterfall Farms was held on March 18, 1994. At that meeting, the directors adopted a medical reimbursement plan covering all "employees and officers executing management responsibilities" and their spouses and dependents. The medical reimbursement plan provides for the payment of all medical care costs that would be "deductible on

---

[2](...continued)
corporate documents for Waterfall Farms.

Form 1040" (before considering limitations).  Under the plan, each participant is entitled to a maximum reimbursement of $10,000 per year.

At a special meeting of the directors held on November 1, 1994, the board of directors of Waterfall Farms adopted a resolution setting forth a repayment obligation similar to that set forth in the bylaws.  At that meeting, the directors also adopted the following resolution:

> RESOLVED that the Corporation's officers and employees shall be required to live at the worksite of the Corporation to ensure security for the Corporation property and operations.  The officers and employees shall be required to live on the worksite to supervise the care and feeding of the livestock of the corporation.  The Corporation shall supply said officers and employees all of their food and lodging while living at said worksite.  That all of the officers and employees shall be considered "on duty" when at the worksite and therefore entitled to such benefits.

C.  <u>Farm Lease</u>

During the years at issue, Waterfall Farms leased the Huber farm to Mr. Huber under a "share-crop" arrangement.  Under a written agreement titled "Farm Lease", dated December 1, 1994 (the 1995 lease), effective for 1 year (to November 30, 1995), Mr. Huber agreed to pay Waterfall Farms $15,000 plus one-third of the proceeds from the sale of all crops grown on the farm.  Mr. Huber was to receive the other two-thirds of the proceeds from the sale of the crops, as well as all payments received under

Federal conservation programs (or any other Federal, State, or local governmental programs).

Mr. Huber agreed (1) to farm the land; (2) to provide all labor and other items required in producing, harvesting, and marketing the crops; (3) to furnish all tools, farm implements, machinery, hired help, fertilizer, chemicals, and seed necessary to cultivate and manage the farm; (4) to protect the crops from injury and waste; (5) to till the land after harvesting the crops; and (6) to rotate the crops from year to year. Waterfall Farms agreed to furnish all necessary materials, and Mr. Huber agreed to supply all necessary labor, to maintain all fences and other improvements.

Mr. Huber and Waterfall Farms entered into a second 1-year farm lease (the 1996 lease), dated December 1, 1995 (ending November 30, 1996). The provisions of the 1996 lease were identical to those contained in the 1995 lease except that Mr. Huber was not required to pay any amount to Waterfall Farms and the proceeds from the sale of the crops were to be divided three-fifths to Mr. Huber and two-fifths to Waterfall Farms.

Mr. Huber entered into a third farm lease with Waterfall Farms, dated December 1, 1996 (the 1997 lease). The 1997 lease was identical to the 1995 lease except that Mr. Huber agreed to pay $5,000 to Waterfall Farms plus one-fourth of the proceeds from the sale of all crops grown on the farm. The term of the

1997 lease was 1 year; it continued in effect year to year until otherwise canceled.

In 1996, Waterfall Farms acquired 10 cows in order to start a herd. Mr. Huber, as an employee of Waterfall Farms, was responsible for the care of the corporation's livestock.

D.   Mr. Huber's Separate Business Activity

During the years at issue, Mr. Huber (as a self-employed farmer) farmed properties that were not owned by Waterfall Farms. These other farms were located 2 to 20 miles from the homestead. In addition, Mr. Huber worked part time for other employers. Specifically, he worked for Alexandria Grain and Oil in 1996 and for Spencer Quarries, Inc., in 1997.

In 1997, Mr. Huber purchased a one-half interest in a race car. He attended races most Saturday and Sunday nights.

In 1995 and 1996, Mrs. Huber worked full time as a secretary for the police department of the City of Mitchell, South Dakota, and part time for Davison County. The Hubers were covered by a health insurance policy that was obtained through Mrs. Huber's employment with the police department. The insurance premium was paid partly by Mrs. Huber and partly by her employer. Waterfall Farms reimbursed the Hubers for Mrs. Huber's share of the insurance premium.

E.    Compensation and Payment of Food, Lodging, and Medical
      Expenses

Mr. Huber was the sole employee of Waterfall Farms.  He kept the corporate books and paid its bills.  For his services, Mr. Huber received $1,000 in 1995, $600 in 1996, and $1,000 in 1997.  In addition, Waterfall Farms paid all of the Hubers' medical care expenses.

In 1997, Waterfall Farms leased the homestead from Ms. Rose; the rent was $7,500 per annum.  The original term of the lease was 1 year beginning January 1, 1997, and ending December 31, 1997; the agreement continued in effect year to year until otherwise canceled.  The Hubers (and one of their daughters) continued to use the homestead as their residence   after Waterfall Farms leased the homestead from Ms. Rose.  In addition to the rent for the homestead, Waterfall Farms paid for the food consumed by the Hubers and their daughter.

Waterfall Farms did not pay dividends for fiscal years ended November 30, 1995, 1996, and 1997.

F.    Income Tax Returns

Mr. Bleeker (petitioners' counsel) prepared the Hubers'
joint Forms 1040, U.S. Individual Income Tax Return, and
Waterfall Farms' Forms 1120, U.S. Corporation Income Tax Return,
for the years at issue.

1.    Waterfall Farms

Waterfall Farms filed timely its Forms 1120 for the taxable
years ended November 30, 1995, 1996, and 1997.  On these returns,
Waterfall Farms reported total income and total deductions as
follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Total income | $27,500 | $20,172 | $30,132 |
| Total deductions | 24,769 | 18,404 | 29,699 |
| Taxable income | 2,731 | 1,768 | 433 |

Included in the total expenses deducted by Waterfall Farms
were the following items for food, lodging, and medical expenses
provided to the Hubers:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food & lodging |  |  |  |
| Food for employees | $4,290 | $4,395 | $4,709 |
| Rent | -- | -- | 7,500 |
| Food & lodging expenses | 4,290 | 4,395 | 12,209 |
| Medical |  |  |  |
| Medical insurance | $1,224 | $1,297 | $3,048 |
| Medical expenses | -- | -- | 1,456 |
| Total medical | 1,224 | 1,297 | 4,504 |

Waterfall Farms filed Forms 1120X, Amended U.S. Corporation
Income Tax Return, for its fiscal years ended November 30, 1995
and 1996, that were received by the Internal Revenue Service in

March 1998.  In the amended returns, Waterfall Farms eliminated the deduction for food for employees.  As a result, the corporation reported taxable income of $7,021 for 1995 and $6,163 for 1996.

### 2.  The Hubers

The Hubers timely filed their joint income tax returns for 1995, 1996, and 1997.  On these returns, the Hubers reported Mr. Huber's wages from Waterfall Farms.  They reported farming income (including Mr. Huber's share of the proceeds from the sale of crops grown on the Huber farm) as self-employment income.  They did not report any income attributable to their food, lodging-related, and medical expenses paid by Waterfall Farms.

The Hubers filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1995.  On the amended return, the Hubers elected to defer crop insurance proceeds.  The amended return did not include the $4,290 paid by Waterfall Farms for the Hubers' food in 1995.  The Hubers did not amend their 1996 return to include the $4,395 paid by Waterfall Farms for their food in 1996.

On Schedule F, Profit or Loss from Farming, Mr. Huber reported gross income, total expenses, and net profit or loss from his separate farming activities for 1995, 1996, and 1997 as follows:

|                  | 1995[1]   | 1996      | 1997      |
|------------------|-----------|-----------|-----------|
| Gross income     | $85,151   | $112,626  | $126,764  |
| Total expenses   | 96,344    | 112,589   | 128,520   |
| Net profit/loss  | (11,193)  | 37        | (1,756)   |

[1] As amended.

G.    Notices of Deficiency

On January 31, 2001, respondent timely mailed to the Hubers a statutory notice of deficiency for 1995, 1996, and 1997 (the Huber notice of deficiency).  Also on January 31, 2001, respondent timely mailed to Waterfall Farms a statutory notice of deficiency for its fiscal years ended November 30, 1995, 1996, and 1997 (the Waterfall Farms notice of deficiency).

In the Waterfall Farms notice of deficiency, respondent disallowed the food, lodging, and medical expenses deducted by Waterfall Farms, totaling $1,224 for 1995, $1,297 for 1996, and $16,713 for 1997.  Respondent determined that (1) Waterfall Farms failed to establish that the food and lodging expenses were ordinary and necessary business expenses under section 162 and (2) those items are the Hubers' personal expenses.  Respondent further determined that Waterfall Farms was liable for the accuracy-related penalty under section 6662(a).

In the Huber notice of deficiency, respondent determined that payments by Waterfall Farms of the Hubers' food, lodging, and medical expenses resulted in constructive dividends as follows:

|  | 11/30/95 | 11/30/96 | 11/30/97 |
|---|---|---|---|
| Food & lodging | $4,290 | $4,395 | $12,209 |
| Medical | 1,224 | 1,297 | 4,504 |
| Total dividends | 5,514 | 5,692 | 16,713 |

OPINION

Issue 1. <u>Expenses Incurred by Waterfall Farms To Provide Medical Benefits, Food, and Housing to the Hubers in 1995, 1996, and 1997</u>

A. <u>Positions of the Parties</u>[3]

Respondent disallowed deductions taken by Waterfall Farms for medical costs (health insurance premiums and other medical care expenses), food, and lodging (rent for the homestead). Respondent asserts that the medical costs, food, and lodging expenses are the Hubers' personal, family, and living expenses and that payments of these expenses by Waterfall Farms constitute constructive dividends to the Hubers. On the other hand, petitioners assert that all the expenditures are reasonable and

---

[3]Under certain circumstances, sec. 7491 places the burden of proof or production on the Commissioner. Sec. 7491 applies to court proceedings arising in connection with tax examinations beginning after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. Petitioners timely filed their returns for the years at issue. Hence, all of the returns were filed on or before Apr. 15, 1998. The record does not disclose when the examination of petitioners' tax returns began, and it is possible that the examination began before July 23, 1998. Petitioners do not contend that sec. 7491 applies in these cases, and they have not otherwise asserted that respondent has the burden of proof or production with respect to any issue presented in these cases. We therefore conclude that sec. 7491 does not apply, and petitioners have the burden of proof and production.

necessary business expenses, deductible by Waterfall Farms and excluded from the Hubers' income.

Petitioners contend that the medical costs are employee benefits, deductible by the employer and excludable from the employee's income under sections 105 and/or 106. Petitioners further maintain that Waterfall Farms provided food and lodging to Mr. Huber in his capacity as an employee and that such was done for the convenience of Waterfall Farms. Consequently, petitioners assert that the food and lodging expenses are employer-provided "meals and lodging", the costs for which are excluded from the Hubers' income under section 119 and deductible by Waterfall Farms.

B. Medical Expenses

We first shall decide whether the payments by Waterfall Farms of the medical expenses are excludable from the Hubers' gross income under sections 105 and 106 and deductible by the corporation as ordinary and necessary business expenses under section 162(a).

Under section 106, "an employee's gross income does not include employer-provided coverage (e.g., accident and health insurance premiums) under an accident and health plan." Rugby Prods. Ltd. v. Commissioner, 100 T.C. 531, 535 (1993). The employer may provide coverage under an accident or health plan by paying the premium (or a portion of the premium) on an accident

or health insurance policy covering one or more employees or by contributing to a separate trust or fund. Sec. 1.106-1, Income Tax Regs.

Under the general rule of section 105(a), amounts received by an employee through accident and health insurance for personal injury or sickness, to the extent attributable to nontaxed employer contributions, are includable in the employee's gross income. Amounts received under an accident or health plan for employees are treated as amounts received through accident or health insurance. Sec. 105(e). An exception to the general rule allows an employee to exclude from gross income amounts received to reimburse the employee for expenses incurred by the employee for the medical care (as defined in section 213(d)) of the employee and the employee's spouse and dependents. Sec. 105(b).

For the reasons set forth below, we agree with petitioners that pursuant to sections 105 and/or 106 payments by Waterfall Farms for reimbursement of medical care costs (including reimbursement for the health insurance premiums) need not be included in the Hubers' income for 1995, 1996, and 1997.

Section 105(e) requires first, that the benefits be received under a "plan", and second, that the plan be "for employees", rather than for some other class of persons such as shareholders and their relatives. Larkin v. Commissioner, 48 T.C. 629, 635 (1967), affd. 394 F.2d 494 (1st Cir. 1968). After giving due

consideration to the record before us, we conclude that Waterfall Farms' medical reimbursement plan satisfies both the "plan" and "for employees" requirements of section 105(e).

Section 1.105-5(a), Income Tax Regs., provides guidelines as to what constitutes an accident or health plan. A plan may cover one or more employees, and different plans may be established for different employees or classes of employees. Id. Income Tax Regs. The regulations do not require that there be a written plan or that there be enforceable employee rights under the plan, so long as the participant has notice or knowledge of the plan. Wigutow v. Commissioner, T.C. Memo. 1983-620.

In the instant case, a plan (as defined in section 1.105-5(a), Income Tax Regs.) existed. Waterfall Farms adopted a written medical reimbursement plan identifying who was eligible to participate, what expenses would be reimbursed, and how participants were to make claims for reimbursement. The plan was adopted at the first meeting of the board of directors.

Mr. Huber had knowledge of the medical reimbursement plan. Moreover, the medical reimbursements provided under the written plan included reimbursement for all "medical care" costs deductible on Form 1040, which includes health insurance costs. Sec. 213(d)(1)(D). And finally, we are satisfied that the corporation's medical plan was for Mr. Huber as an employee of

Waterfall Farms, and not for his benefit as one of the corporation's shareholders.

Plans limited to employees who are also shareholders are not per se disqualified under section 105(b). Larkin v. Commissioner, supra at 635 n.5. In this regard, we have sustained plans for corporate officers who were also shareholders because those officers had central management roles in conducting the business of the corporation. Wigutow v. Commissioner, supra; Epstein v. Commissioner, T.C. Memo. 1972-53; Seidel v. Commissioner, T.C. Memo. 1971-238; Smith v. Commissioner, T.C. Memo. 1970-243; Bogene, Inc. v. Commissioner, T.C. Memo. 1968-147.

Respondent has stipulated that during the years at issue Mr. Huber was an employee of Waterfall Farms. Indeed, Mr. Huber was the corporation's only employee. And without Mr. Huber's involvement, Waterfall Farms could not have conducted its farming operations.

Mr. Huber's compensation for services rendered to Waterfall Farms was his salary and employee benefits. Respondent does not contend that Mr. Huber received excessive compensation. Indeed, respondent contends that Mr. Huber was undercompensated for his services.

Although Mrs. Huber did not work for Waterfall Farms, payment of her medical expenses was based on her status as Mr.

Huber's spouse.  Likewise, payment of the medical expenses for the Hubers' daughter was based on her status as Mr. Huber's dependent.  The derivative participation of Mr. Huber's spouse and dependent is plainly contemplated both by the medical plan and by section 105(b).

On the basis of the record before us, we conclude that medical payments made for the benefit of the Hubers and/or their daughter were made under a plan for employees and not for shareholders.  Accordingly, during the years at issue, the medical payments made by Waterfall Farms pursuant to its medical plan (the insurance premiums and other medical care expenditures) are excludable from the Hubers' gross income under section 105(b).

Section 162(a) permits a taxpayer to deduct all ordinary and necessary expenses incurred during the taxable year in carrying on a taxpayer's trade or business.  An expense is ordinary if it is customary or usual within a particular trade, business, or industry or relates to a transaction "of common or frequent occurrence in the type of business involved."  Deputy v. du Pont, 308 U.S. 488, 495 (1940).  An expense is necessary if it is appropriate and helpful for the development of the business.  See Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

When payments for medical care are properly excludable from an employee's income because they are made under a "plan for

employees," they are deductible by the employer as ordinary and necessary business expenses under section 162(a). Sec. 1.162-10(a), Income Tax Regs. Consequently, Waterfall Farms is entitled to deduct the insurance premiums and medical reimbursement payments under section 162(a).

C.  Food and Rent

1.  Section 119: Employer-Provided Meals and Lodging

We next decide whether the food and rent are employer-provided meals and lodging expenses, excludable from the Hubers' income under section 119 and deductible by Waterfall Farms under section 162.

Meals and lodging furnished to an employee by his employer are excluded from the employee's gross income under section 119 if the meals and lodging are provided for the convenience of the employer on the premises of the employer. In the case of lodging, the employee must be required to accept the lodging on the business premises of his employer as a condition of employment.

The term "'business premises of the employer' generally means the place of employment of the employee." Sec. 1.119-1(c)(1), Income Tax Regs. They are the premises where the employee performs a significant portion of his duties or where the employer conducts a significant portion of its business. McDonald v. Commissioner, 66 T.C. 223 (1976). The extent or

boundaries of the business premises is a factual question that considers the employee's duties as well as the nature of the employer's business. Lindeman v. Commissioner, 60 T.C. 609, 615 (1973).

During the years at issue, Waterfall Farms paid for the Hubers' food (which they consumed on the homestead) and deducted the cost of the food on the corporation's Forms 1120 filed for fiscal years ending November 30, 1995, 1996, and 1997. In 1995 and 1996, the Hubers rented the homestead from Ms. Rose. Waterfall Farms filed amended returns for 1995 and 1996 eliminating the deduction for the food because the homestead was not its business property. In 1997, Waterfall Farms rented the homestead from Ms. Rose. Although Waterfall Farms rented the homestead, there is no evidence that any business activity (aside from record keeping) took place on the homestead. Thus, the food and lodging were not provided on the business premises of Waterfall Farms.

Moreover, section 119 requires that meals and lodging be furnished for the "convenience of the employer". Meals and lodging are furnished for the "convenience of the employer" if there is a direct nexus between the meals and lodging furnished and the asserted business interests of the employer served thereby. McDonald v. Commissioner, supra at 230. Petitioners

assert that Mr. Huber, as the corporation's sole employee, was required to be available for duty 24 hours a day.

Waterfall Farms leased the Huber farm to Mr. Huber. Waterfall Farms contracted with Mr. Huber as a tenant, not as its employee, to perform all necessary work on the Huber farm.

It is well settled that "Ordinarily, taxpayers are bound by the form of the transaction they have chosen; taxpayers may not in hindsight recast the transaction as one that they might have made in order to obtain tax advantages."  Framatome Connectors USA Inc. v. Commissioner, 118 T.C. 32, 70 (2002) (citing Estate of Leavitt v. Commissioner, 875 F.2d 420, 423 (4th Cir. 1989), affg. 90 T.C. 206 (1988), and Grojean v. Commissioner, 248 F.3d 572, 576 (7th Cir. 2001), affg. T.C. Memo. 1999-425).  Here, inasmuch as Mr. Huber farmed the Huber farm as a tenant, and not as an employee of Waterfall Farms, the food and lodging in question were not furnished to Mr. Huber as a corporate employee for the convenience of his employer.  Thus, the food and rent at issue are not section 119(a) meal and lodging expenses.

2.   Inclusion of Payments in the Hubers' Gross Income

When a corporation makes an expenditure that primarily benefits the corporation's shareholders, the amount of the expenditure may be taxed to the shareholder as a constructive dividend.  Hood v. Commissioner, 115 T.C. 172 (2000); Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980); Am. Insulation Corp.

v. Commissioner, T.C. Memo. 1985-436.  We have found that expenses for food and rent paid by Waterfall Farms are the Hubers' expenses.  Petitioners contend that the payments are not constructive dividends because Mr. Huber was required to repay any amounts that Waterfall Farms could not deduct for Federal income tax purposes.  Petitioners cite Cepeda v. Commissioner, T.C. Memo. 1993-477, to support their position.  Cepeda, however, is inapposite.  In that case, the taxpayers claimed that advances made by the corporation were loans rather than employee compensation or constructive dividends.  Here, petitioners do not contend that the corporate payments of the Hubers' expenses were loans.

For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment."  Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988).  In the instant case, when the payments were made there was no unconditional obligation on the part of the Hubers to repay a specific dollar amount to the corporation.  Their obligation to repay any of the payments was in general terms.  The amount of repayment could not be determined when the payments were made. Any obligation to repay any amount could not arise before

respondent disallowed the deduction for the expenses; i.e, when the Waterfall Farms notice of deficiency was issued in January 2001. Thus, the payments were not loans. Since the payments when made by Waterfall Farms did not constitute business expenses of the corporation or loans to the Hubers, the conclusion is inescapable that the payments constituted distributions by Waterfall Farms to the Hubers.

In N. Am. Oil Consol. v. Burnett, 286 U.S. 417, 424 (1932), the Supreme Court stated:

> If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

It is clear, therefore, under the claim of right doctrine, the amounts paid by Waterfall Farms in 1995, 1996, and 1997 were taxable to the Hubers in those years. See Pahl v. Commissioner, 67 T.C. 286, 289 (1976).

If a taxpayer is required to repay income recognized under the claim of right doctrine in an earlier tax year, section 1341 permits the taxpayer, in effect, to elect to compute his taxes for the year of repayment in a manner that gives the taxpayer the equivalent of a refund (without interest) of tax for the earlier year. Specifically, section 1341(a)(5) permits the tax for the year of repayment to be reduced by the amount of the tax paid for the year of receipt that was attributable to the inclusion of the

repaid amount of that year's gross income.  United States v. Skelly Oil Co., 394 U.S. 678, 682 (1969).  Section 1341, however, requires actual repayment, restoration, or restitution.  Chernin v. United States, 149 F.3d 805, 816 (8th Cir. 1998); Kappel v. United States, 437 F.2d 1222, 1226 (3d Cir. 1971); Estate of Smith v. Commissioner, 110 T.C. 12 (1998).

Although the bylaws of Waterfall Farms require the Hubers to repay amounts for which the corporation is disallowed a deduction, the Hubers do not claim that they have repaid the disallowed amounts.  Indeed, there is no evidence in the record to show that they did.  Therefore, section 1341 does not apply. We hold that Waterfall Farms' payment of the Hubers' food and rent constitutes income to the Hubers.

Petitioners argue that the expenses are meals and lodging expenses excludable under section 119.  We have found to the contrary.

Personal, family, or living expenses are not deductible except as otherwise expressly permitted.  Sec. 262.  A taxpayer's expenses for his or her own meals and lodging are personal because they would have been incurred whether or not the taxpayer had engaged in any business activity.  Christey v. United States, 841 F.2d 809, 814 (8th Cir. 1988); Moss v. Commissioner, 80 T.C. 1073, 1078 (1983), affd. 758 F.2d 211 (7th Cir. 1985).  In order for personal living expenses to qualify as a deductible business

expense under section 162(a), the taxpayer must demonstrate that the expenses were different from, or in excess of, what he would have spent for personal purposes. <u>Sutter v. Commissioner</u>, 21 T.C. 170, 173 (1953). Petitioners did not produce any evidence that the food and the rent for the homestead were other than ordinary living expenses. Thus, petitioners have failed to establish that the Hubers are entitled to a deduction for any portion of the expenses under section 162.[4]

Issue 2. <u>Accuracy-Related Penalty Under Section 6662(a)</u>

Respondent determined that Waterfall Farms is liable for the accuracy-related penalty under section 6662(a). As pertinent here, section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

---

[4]Except as otherwise provided, an individual is not allowed a deduction with respect to the use of a dwelling unit that is used by the individual as a residence. Sec. 280A(a). The individual, however, may deduct expenses allocable to portions of the dwelling that are exclusively used for business purposes. Sec. 280A(c). In the case at bar, the Hubers did not argue that their housing expenses are deductible under sec. 280A. Therefore, we do not address the question of whether certain portions of their expenses may be deductible under that section. We note, however, that the Hubers have made no showing that the farmhouse, or any portion thereof, was used exclusively for business purposes.

The penalty under section 6662(a) does not apply to any portion of an understatement of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his/her proper tax liability for the year.  Id.  The good faith reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement.  Sec. 1.6664-4(b), Income Tax Regs.

Despite the fact that petitioners have the burden of proof, see supra note 3, petitioners have made no showing that they made an attempt to comply with the tax rules and regulations with regard to those deductions taken by Waterfall Farms for the years at issue which have been disallowed.  Hence, with respect to those deductions, petitioners have failed to show that Waterfall Farms was not negligent.  Nor have petitioners showed that they acted in good faith with respect to, or that there was reasonable cause for, the position they took.

Further, petitioners do not claim that they relied on Mr. Bleeker or any other professional as to the tax treatment of the

expenses for food and lodging.[5]  Petitioners simply assert that the accuracy-related penalty does not apply because Waterfall Farms properly claimed the deductions under section 162(a) and the Hubers properly excluded the payments under section 119.  We have found to the contrary.

Under these circumstances, we are compelled to hold that Waterfall Farms is liable for the accuracy-related penalty for the years at issue.

To reflect the foregoing,

<u>Decisions will be</u>

<u>entered for respondent</u>.

---

[5]Before the trial in these cases, respondent filed a motion to disqualify Mr. Bleeker from his representation of petitioners. Respondent's motion was based, in part, on the premise that, if petitioners contend that they reasonably relied on Mr. Bleeker's advice with respect to the proper tax treatment of the payments at issue, then Mr. Bleeker would be required to testify as a witness in the trial of these cases.  The Court held a telephone conference call with Mr. Bleeker and counsel for respondent to discuss respondent's motion.  During that call, Mr. Bleeker informed the Court that petitioners did not intend to raise reasonable reliance on a tax professional as a defense to the accuracy-related penalties.